Charles X. Gormally, Esq. (Bar No. 023581979)
Lucas Markowitz, Esq.  (Bar No. 023802011)
**BRACH EICHLER L.L.C.**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700
*Attorneys for Jane Doe 1, individually*
*and on behalf of all other persons similarly situated*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all other persons similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>BANC, JACK & JOE, LLC dba TITILATIONS GO-GO-BAR, BANC PERO, JOSPEH CARERI, JACK PERO, ABC COMPANIES 1-10 and JOHN DOES 1-10,<br><br>    Defendants. | Civil Action No.: 2:17-cv-03843-KSH-CLW<br><br><br>**ORAL ARGUMENT REQUESTED** |

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
(1) CONDITIONAL COLLECTIVE ACTION CERTIFICATION;
(2) COURT AUTHORIZED NOTICE; (3) PRODUCTION OF NAMES AND
ADDRESSES PURSUANT TO 29 U.S.C. § 216(b); AND (4) CLASS
CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

_____

BRACH EICHLER L.L.C.
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-5700
*Attorneys for Jane Doe 1, individually and on*
*behalf of all other persons similarly situated*

Of Counsel and on the Brief:
    Charles X. Gormally, Esq.
    Lucas A. Markowitz, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL HISTORY............................................................................................2

STATEMENTS OF FACTS ...........................................................................................3

    I.    Defendants Consider All Dancers Independent Contractors And Denied All of Them the Minimum Wage For the Entire Class Period............................................3

    II.    The Determination As to the Propriety of Defendants' Classification of Dancers Will Not Vary Among Class Members..................................................................6

    III.    The Putative Class and Collective Covers Hundreds of Dancers ..........................8

LEGAL ARGUMENT....................................................................................................9

    I.    CONDITIONAL CERTIFICATION SHOULD BE GRANTED BECAUSE THE PLAINTIFF AND THE PROPOSED CLASS ARE SIMILARLY SITUATED....9

        A.    Plaintiff has met her minimal and lenient burden at this stage demonstrating all members of the collective were uniformly classified as ICs rather than employees and all were denied the minimum wage...........9

        B.    Plaintiff's Proposed Notice is Necessary and Proper ...............................15

    II.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)........................................................................................................16

        A.    The Legal Standard ..................................................................................16

        B.    This Case is Well Suited For Class Treatment ..........................................17

        C.    Plaintiff Meets the Requirements of Rule 23(a) .......................................18

        D.    Plaintiff Meets the Requirements of Rule 23(b)(3) ..................................24

        E.    Plaintiff Meets the Requirements of Rule 23(b)(2) ..................................29

CONCLUSION.............................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Amchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997)..................................................................................................22

Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,
    568 U.S. 455 (2013)..................................................................................................24

Ansoumana v. Gristedes Operating Corp.,
    201 F.R.D. 81 (S.D.N.Y. 2001) ..............................................................................25

Atis v. Freedom Mortgage Corp.,
    CV 15-3424 (RBK/JS), 2016 WL 7440465 (D.N.J. Dec. 27, 2016) .......................25

Baby Neal v. Casey,
    43 F.3d 48 (3d Cir.1994)..........................................................................................23

Barnes v. American Tobacco Co.,
    161 F.3d 127 (3d Cir. 1998).....................................................................................30

Beck v. Maximus, Inc.,
    457 F.3d 291 (3rd Cir. 2006) .............................................................................21, 23

Bobryk v. Durand Glass Mfg. Co.,
    50 F. Supp. 3d 637 (D.N.J. 2014) ...........................................................................16

Brooks v. Vill. of Ridgefield Park,
    185 F.3d 130 (3d Cir. 1999).....................................................................................11

Carrera v. Bayer Corp.,
    727 F.3d 300 (3d Cir. 2013).....................................................................................26

Clark v. Prudential Ins. Co. of Am.,
    940 F. Supp. 2d 186 (D.N.J. 2013) ..........................................................................26

Clarke v. Lane,
    267 F.R.D. 180 (E.D. Pa. 2010)...............................................................................30

Clincy v. Galardi S. Enters., Inc.,
    808 F.Supp.2d 1326 (N.D. Ga. 2011) ......................................................................14

In re Constar Int'l Inc. Sec. Litig.,
    585 F.3d 774 (3d Cir. 2009).....................................................................................17

D'Alauro v. GC Servs. Ltd. P'ship,
    168 F.R.D. 451 (E.D.N.Y. 1996) .............................................................................27

Damassia v. Duane Reade, Inc.,
    No. 04–8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ....................................................11

DeGidio v. Crazy Horse Saloon & Rest., Inc.,
    4:13-CV-02136-BHH, 2017 WL 5624310 (D.S.C. Jan. 26, 2017) ...................................25, 28

Delgado v. Ortho-McNeil. Inc.,
    No. 07-263, 2007 WL 2877238 (C.D. Cal. Aug. 7, 2007) ....................................................20

Goldman v. Radioshack Corp.,
    CIV.A. 03-0032, 2005 WL 1124172 (E.D. Pa. May 9, 2005) ................................................25

Gulf Oil Co. v. Bernard,
    452 U.S. 89 (1981)...............................................................................................................17

Guzman v. Three Amigos SJL Inc.,
    117 F. Supp. 3d 516 (S.D.N.Y. 2015)..............................................................................12, 13

Hargrove v. Sleepy's, LLC,
    220 N.J. 289 (2015) .............................................................................................................19

Harrell v. Diamond A Entm't, Inc.,
    992 F. Supp. 1343 (M.D. Fla. 1997) ..................................................................................14

Hart v. Rick's Cabaret Int'l Inc.,
    09 CIV 3043 JGK, 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010) ....................................19, 28

Hart v. Rick's Cabaret Int'l, Inc.,
    967 F. Supp. 2d 901 (S.D.N.Y. 2013)...............................................................13, 20, 23, 28

Henderson v. 1400 Northside Drive, Inc.,
    110 F. Supp. 3d 1318 (N.D. Ga. 2015) ...............................................................................13

Herring v. Hewitt Assocs., Inc.,
    2007 WL 2121693 (D.N.J. July 24, 2007) ..........................................................................15

Houston v. URS Corp.,
    591 F. Supp. 2d 827 (E.D. Va. 2008) .................................................................................20

In re Hydrogen Peroxide Antitrust Litig.,
    552 F.3d 305 (3d Cir.2008)................................................................................................16

Iliadis v. Wal-Mart Stores, Inc.,
    191 N.J. 88 (2007) ..............................................................................................................17

Jones v. Cruisin' Chubbys Gentlemen's Club,
    17-CV-125-JDP, 2018 WL 1175412 (W.D. Wis. Mar. 6, 2018)......................................20, 29

Kelsey v. Entertainment U.S.A. Inc.,
    67 F. Supp. 3d 1061 (D. A.Z. 2014) ...............................................................12

Martin v. Cooper Elec. Supply Co.,
    940 F.2d 896 (3d Cir. 1991)...........................................................................11

Massie v. U.S. Dept. of Housing and Urban Development,
    246 F.R.D. 490 (W.D. Pa. 2007) ...................................................................22

McFeeley v. Jackson St. Entm't, LLC,
    825 F.3d 235 (4th Cir. 2016) .........................................................................13

In re Mercedes-Benz Antitrust Litig.,
    213 F.R.D. 180 (D.N.J. 2003)........................................................................27

Nerland v. Caribou Coffee Co. Inc.,
    564 F. Supp. 2d 1010 (D. Minn. 2007)..........................................................21

Patton v. Thomson Corp.,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ...........................................................12

Pearsall-Dineen v. Freedom Mortgage Corp.,
    27 F. Supp. 3d 567 (D.N.J. 2014) ..................................................................15

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
    148 F.3d 283 (3d Cir. 1998).....................................................................26, 27

Reich v. Circle C. Invest., Inc.,
    998 F.2d 324 (5th Cir. 1993) .........................................................................14

Ritti v. U-Haul Int'l, Inc.,
    No. 05-CV-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) ............................17

Rivet v. Office Depot, Inc.,
    207 F. Supp. 3d 417 (D.N.J. 2016) ...........................................................18, 25

In re Schering Plough Corp. ERISA Litig.,
    589 F.3d 585 (3d Cir. 2009).........................................................................21

Shaw v. Set Enterprises, Inc.,
    241 F. Supp. 3d 1318 (S.D. Fla. 2017) ..........................................................13

Spellman v. Am. Eagle Exp., Inc.,
    No. 10–1764, 2011 WL 4102301 (E.D. Pa. May 18, 2011) .................................11

Stewart v. Abraham,
    275 F.3d 220 (3d Cir. 2001)....................................................................17, 18

Sullivan v. DB Inv., Inc.,
    667 F.3d 273 (3d Cir. 2011).........................................................................24

Summerfield v. Equifax Info. Servs. LLC,
    264 F.R.D. 133 (D.N.J. 2009).....................................................................24

Symczyk v. Genesis Healthcare Corp.,
    656 F.3d 189 (3d Cir. 2011)) ...........................................................9, 10, 14, 15

Thompson v. Linda and A. Inc.,
    779 F.Supp.2d 139 (D.D.C.2011) ..............................................................14

Tierno v. Rite Aid Corp.,
    No. C 05-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006)..........................25

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S. 338 (2011)................................................................................18

Weikel v. Tower Semiconductor Ltd.,
    183 F.R.D. 377 (D.N.J. 1998)...................................................................23

Weisfeld v. Sun Chem. Corp.,
    210 F.R.D. 136 (D.N.J. 2002)...................................................................22

In re Wells Fargo Home Mortg. Overtime Pay Litigation,
    571 F.3d 953 (9th Cir. 2009) ...................................................................21

Wetzel v. Liberty Mut. Ins. Co.,
    508 F.2d 239 (3d Cir. 1975).....................................................................23

Williams v. Jani-King of Philadelphia Inc.,
    837 F.3d 314 (3d Cir. 2016).............................................................19, 20, 25

Woods v. Club Cabaret, Inc.,
    140 F. Supp. 3d 775 (C.D. Ill. 2015) ......................................................11, 12

Zavala v. Wal Mart Stores Inc.,
    691 F.3d 527 (3d Cir. 2012)...................................................................9, 14

**Statutes**

29 U.S.C.A. § 206..............................................................................11, 14

29 U.S.C. § 256(b)..................................................................................15

**Other Authorities**

7A Charles A. Wright, et al., Federal Practice and Procedure § 1751 (3d ed. 2005) ...................17

Fed. R. Civ. P. 23 ................................................................................................. *passim*

## PRELIMINARY STATEMENT

The hallmark of a class and collective action is a group of similarly situated individuals who are treated similarly to one other, but differently from others. For the last fifteen years and continuing until today, Defendants concede that they uniformly and unlawfully classified all exotic dancers working at Defendants' Bloomfield, New Jersey strip club known as "Titillations," as independent contractors ("ICs"). At Titillations, the only category of worker treated as ICs are the dancers. In fact, all other categories of workers at Titillations, including the bartenders, kitchen staff, security personnel and DJ's, are considered employees and paid more than the minimum wage. Legally, these dancers – Jane Doe 1 and all members of the proposed class and collective – are employees. So, Defendants' decision to treat them similarly to each other but differently from everyone else suggests that this case is custom tailored for class and collective treatment.

Defendants' blanket IC classification of exotic dancers gives rise to numerous questions of law and fact that are all common among the proposed class. Chief among these common questions is the propriety of the classification itself: Are the hundreds of dancers who Titillations classified as ICs really employees? If so, then Defendants violated the minimum wage provisions of both the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL") by unvaryingly denying all dancers the minimum wage.

This is the central issue in the case; it predominates over all others; and it applies equally to the every dancer who worked for Defendants over the years. Plaintiffs' other claims – failure to pay the minimum wage, unlawful deductions, unlawful tip splitting, unjust enrichment and fraud – all stem from the original sin of their misclassification and will be decided in the same way for all members of the class and collective.

Defendants have built their business around unlawfully treating dancers as ICs and not paying them the minimum wage. The issues raised here strike at the heart of this business  model.

Indeed, by virtue of this illegal scheme Defendants have saved themselves at least $4.0 million in monies that should have gone to their dancers as minimum wages. This case seeks to provide redress to those who were damaged by this conduct. If a class is certified and Plaintiff succeeds in demonstrating she and the other dancers are employees, then Defendants will have to change their ways, start paying their employees the minimum wage and right their previous wrongs. If Plaintiff fails, then it will be business as usual at Titillations. Either way, through class and collective treatment of this case, the issue will be decided once–and for all.

Plaintiff now moves for class certification pursuant to Rule 23 and for conditional certification pursuant to 29 U.S.C. § 216(b) of a class and collective comprised of "all persons who worked at Titillations as exotic dancers at any time three years prior to the filing of the Complaint until entry of judgment in this case." Because all dancers were subject to the same unlawful employment policy and the determinations that must be made are perfectly suited for class-wide and collective resolution, Plaintiff's motion should be granted.

## **PROCEDURAL HISTORY**

This misclassification case was filed as a class and collective action on May 31, 2017. *ECF No. 1*. The allegations in the Complaint are straightforward.

Plaintiff represents a group of exotic dancers employed by Defendants who were misclassified as independent contractors and denied the minimum wage while working at Defendants' club, Titillations. On December 8, 2017, Plaintiff filed a Motion for Conditional Certification. (*ECF No. 14*). While the motion was pending, Plaintiff was denied any and all class

discovery. Nevertheless, Defendants deposed Plaintiff on November 14, 2018, and Plaintiff deposed Defendant Banc Pero ("Pero") in his 30(b)(6) capacity on November 20, 2018.[1]

On November 21, 2018, the Court denied Plaintiff's Motion for Conditional Certification without prejudice. (*ECF Nos. 35-36.*)[2] On December 3, 2018, the Court issued an Order prohibiting Plaintiff from filing a new motion for conditional certification. (*ECF No. 38*). Four days later, Plaintiff received the transcript from Defendants' 30(b)(6) deposition that included new relevant evidence, and filed a Motion for Reconsideration less than ten days later. (*ECF No. 39*). That motion was denied as untimely. (*ECF No. 45*).

In late March 2019, the Court ordered Plaintiff to file a motion for conditional and class certification by April 29, 2019. (*ECF Nos. 49, 51*).

## STATEMENTS OF FACTS

In support of Plaintiff's original motion for conditional certification, Plaintiff provided the Court with a general description of the parties, the case and an explanation of some of the rules applying to dancers at Titillations. (*ECF No. 14, 18*). For the sake of economy, that pleading and its associated declarations and exhibits are incorporated by reference here. Additional facts that were subsequently developed and background uniquely relevant to this Motion are set forth below.

### I. Defendants Consider All Dancers Independent Contractors And Denied All of Them the Minimum Wage For the Entire Class Period.

Defendants classify all exotic dancers at Titillations as ICs rather than employees, and pay them nothing rather than paying them the minimum wage. Defendant Pero's 30(b)(6) deposition

---

[1] Plaintiffs reserves the right to take depositions on the merits and engage in class discovery and depositions following a ruling on this Motion.

[2] While *ECF Nos. 35-36* are dated November 21, 2017, they were docketed on November 26, 2018—the day before the status conference.

corroborated Plaintiff's previous sworn declaration on this point. (*See Deposition of Banc Pero*

(*"Pero Dep."*) *at 75:6-15; 76:9-15, 72:11-73:1, 79:23-80:4*; see *ECF 14-1 at ¶¶ 5-7*).[3]

     *First*, Mr. Pero admitted that dancers have not been paid **any wage** by Titillations much

less the minimum wage for at least the last fifteen years:

> Q.     Does Titillations compensate the dancers in any way?
> A.     None.
> Q.     Does Titillations pay the minimum wage to dancers?
> A.     No.
> Q.     Has Titillations ever paid the minimum wage to dancers?
> A.     Dancers got paid by the shift 20-plus 15 years ago for a short
> time. That ended.
>
>                *      *      *
>
> Q.     Okay. So is it fair to say, though, that for at least 20 years,
> Titillations has not paid the minimum wage to dancers?
> A.     That's fair to say.
> Q.     And it's fair to say that for 20 years, Titillations has not
> compensated dancers in any way?
> A.     That's fair to say.

(*Pero Dep. 75:6-15; 76:9-15*). In other words, for at least fifteen years, all dancers have been

subject to the same unlawful employment policy of denying them the minimum wage.

     By contrast, Mr. Pero admitted that **except** for the dancers, **every other position** at

Titillations is considered an employee and is paid at least the minimum wage. In response to

questions about what types of staff Titillations are considered "employees," Mr. Pero said:

> Q.     . . . Barbacks, yes?
> A.     Yes.
> Q.     Bartenders?
> A.     Yes.
> Q.     DJs?
> A.     Yes.
> Q.     Managers?
> A.     Yes.
> Q.     Kitchen staff?

---

[3] The Deposition of Banc Pero is attached as Exhibit A to the Declaration of Lucas A. Markowitz, Esq. ("Markowitz Decl.").

> A.    Yes.
> Q.    Dancers?
> A.    No.
> Q.    No?
> **A.    Dancer are not employees.**

(*Pero Dep. 72:11-73:1*). Then Mr. Pero confirmed that the **only** position at Titillations that is not

considered an employee and paid at least the minimum wage are the dancers themselves:

> Q.    Okay, fair. When you say dancers are not employees, are the other categories of staff that we mentioned, are they employees?
> A.    Absolutely.
> Q.    Okay. So the DJ is an employee?
> A.    Yes.
> Q.    The managers are employees?
> A.    Yes.
> Q.    The kitchen staff are employees?
> A.    Yes.
> Q.    The barbacks are employees?
> A.    Yes.
> Q.    The bartenders are employees?
> A.    Yes.
> Q.    And what about the occasional security?
> A.    Yes.
>                   *         *         *
> Q.    The categories of employees we just mentioned **excluding dancers**, are they paid via paycheck?
> A.    Yes, they are.
>
>                   *         *         *
> Q.    Do all of those categories of employees make minimum wage or more?
> A.    More.

(*Pero Dep. 73:2-17; 73:20-23; 74:10-12*). In other words, the DJ's, the managers, the kitchen

staff, the barbacks, the security personnel and the bartenders were all classified as employees and

paid more than the minimum wage. By contrast, the dancers were classified as ICs and paid

nothing.

Next, Mr. Pero confirmed that he and Titillations deem the dancers to be independent

contractors:

> Q. Okay. Can you tell me why Titillations doesn't pay the minimum wage to dancer?
> A. Dancers are not employees.
> Q. You said earlier they're independent contractors?
> A. **I believe they're independent contractors.**

(*Pero Dep. 79:23-80:4*) (emphasis added).

Lastly, there is a set of written "Dancer Info and Rules" that has been in effect for "[a] minimum of 15 years," which applies to all dancers, is posted "in the hallway for dancers to see," and a copy is given to "every single" dancer when they are hired. (*Pero Dep. 38:2-39:6; Pero Dep. Ex. D5 ("Dancer Info and Rules")*).[4] In bolded capital letters, these rules say:

> ### YOU ARE CONSIDERED AN INDEPENDENAT CONTRACTOR.
> ### YOU ARE NOT AN EMPLOYEE.
> ### YOU WILL NOT GET A PAYCHECK AND YOU ARE NOT ON OUR BOOKS.

Plaintiff said that she and the other exotic dancers at Titillations were deemed independent contractors and denied the minimum wage. Now Defendants have said that all their dancers are deemed independent contractors and denied the minimum wage. Further, the Dancer Info and Rules, a written policy that applied to every dancer for the last fifteen years, also provides that the dancers are deemed independent contractors and denied the minimum wage.

## II.   The Determination As to the Propriety of Defendants' Classification of Dancers Will Not Vary Among Class Members

Having established that all Titillations' exotic dancers are classified as ICs and denied the minimum wage, the issue becomes whether that classification was proper. That determination will not vary from dancer to dancer because they all performed the same duties, were all subject to the same rules, and Titillations exerted the same level of control over them all. (*See Pero Dep. 33:24-*

---

[4] Exhibit D5 marked at the Pero Dep. is attached to the Markowitz Decl. as Exhibit B.

*:34:3; 42:1-51:24; Pero Dep. Ex. D5-D6*); *ECF 14-1 at ¶¶ 5-7*).[5] While minor changes to the rules were made over the past fifteen years, the essential elements of the rules and the level of control have remained the same.[6] Most importantly, Pero admitted that whatever the rules were, all of them applied to all of the dancers equally. Some examples of rules and policies that have been in effect for the entire class period continuing until today are listed below.[7]

1. Titillations controlled the schedule and set the shift times: "Be here 30 minutes before your shift starts. 11:30 am for noon. 2:30 for 3:00 pm. 7:00 pm for 7:30." (*See Dancer Info and Rules; Pero Dep. 38:2-10*). Titillations sets the shift times and the dancers are bound to those times. (*Pero Dep. 98:8-16*).

2. Titillations controlled what dancers could wear: "Bring at least 2 pairs of heels and at least 4 different color outfits. You will wear each outfit only 2 times per shift." (*See id.*). "This is a Go-Go-Bar, please dress accordingly. This means G-strings, thongs, lingerie, and other sexy outfits." (*Pero Dep., Ex. D6, P00005; Pero Dep. 43:23-44:15*).

3. Titillations controlled when dancers must take off their clothes: "Dresses, skirts, pants, etc. are to be removed within 5 minutes of going on stage." (*See id.*)

4. Titillations controlled how and when dancers would dance: "Please start your set on time. You all do 30 total minutes. 15 minutes on stage dancing. 15 minutes walking bar for tips. Dancing means dancing, pole work, floor work. Standing around looking bored or talking to other dancers is not dancing. You are here to dance and entertain." (*See id.*).

5. Titillations controlled how dancers could collect tips: "You may walk around the bar 2 times for tips. NO MORE! Please do not bother customers who are eating. Do not wait on a dancer line to take a tip. Talking to customers is a good idea. So is smiling." (*See id.*).

---

[5] Exhibit D6 marked at the Pero Dep. contains documents Bates P00003-P00016, which are various posters hung at Titillations explaining various rules to which all dancers are subject and is attached to the *Markowitz Decl.* as *Exhibit C*.

[6] For example, Mr. Pero admitted that the Dancer Info and Rules have been "in effect since the day we opened," but noted that some rules were added or revised later.  (*See, e.g., Pero Dep. 40:24-41:6; 43:1-15; 45:10-19; 47:16-25; 49:2-25; 51:9-20*).

[7] The full panoply of rules in effect during the class period are found in the *Markowitz Decl., Exs A-B*. Mr. Pero's admission that all the rules apply to all of the dancers is found in the *Pero Dep. 37:10-38:10; 42:4-25; 43:1-51:23*.

6. Titillations controlled the fees dancers could charge for private dances: "Private dances are 5 minutes long and you charge $20. Do not overcharge or dance for less time . . . . Champagne dances are 30 minutes long and your pay is $100." (*See id.*).

7. Titillations also required dancers to share their tips with Titillations and the DJs: "There are only two fees here. House fee is $30 and the D.J. fee is $15." (*See id.*).

These rules and others have been enforced with a variety of discipline ranging from warnings to terminations. (*Pero Dep. 112:22-113:3; 113:19-23*). For example, dancers would receive write ups that would be posted on the wall in Titillations if they failed to show up for a shift. (*Pero Dep. 78:3-14*). Plaintiff herself was subject to several write ups for violating Titillations' rules. (*See Deposition of Jane Doe 1 ("Doe Dep.") at 42:23-44:12;106:25-107:17 see ECF 14-1 at ¶ 22*).[8] Titillations even imposed fines and monetary penalties on the dancers for violations of their rules. (*Pero Dep. 116:9-117:11*). Dancers could even be terminated if they failed to pay the $30 "House Fee" and $15 "DJ Fee" each shift. (*Pero Dep. 140:18-144:10*).

### III. The Putative Class and Collective Covers Hundreds of Dancers

Titillations has 180 dancer shifts per week: two four-hours shifts on Monday, Tuesday and Wednesday, and three four-hour shifts on Friday, Saturday and Sunday. (*Pero Dep. 22:1-5; 96:4-18; see Dancer Info and Rules*). Mr. Pero estimates that he has at least 90 different dancers who work those shifts over the course of the week. (*Pero Dep. 22:6-9*). Taking a simple sample from two years ago for the two weeks beginning March 20, 2017 and ending April 2, 2017, there are at least 50 unique stage names scheduled to work at Titillations. (*Markowitz Decl., Ex. D*). Indeed, in the most recent "Dancer Schedule" Titillations posts online for the two weeks beginning April 15, 2019 and ending April 28, 2019, there are at least 70 different stage names listed that were not

---

[8] The Deposition of Jane Doe 1 is attached as *Exhibit F* to the *Markowitz Decl.*

listed in 2017. (*Markowitz Decl., Ex. E*). Just looking at a sampling of two two-week spans in 2017

and 2019, there are over 120 different dancers listed on Titillations' schedule.

The number of dancers who work at Titillations is so numerous that Mr. Pero said it was

impossible to even estimate how many different dancers work over the course of a single year, but

believed it to be far more than 90. (*Pero Dep. 22:13-18*). Suffice it to say, the number of dancers

affected by Defendants' misclassification reaches into the hundreds.

## LEGAL ARGUMENT

I. **CONDITIONAL CERTIFICATION SHOULD BE GRANTED BECAUSE THE PLAINTIFF AND THE PROPOSED CLASS ARE SIMILARLY SITUATED**

A. **Plaintiff has met her minimal and lenient burden at this stage demonstrating all members of the collective were uniformly classified as ICs rather than employees and all were denied the minimum wage.**

As the Court correctly explained in its November 21, 2018 opinion, the Third Circuit has

adopted a two-step procedure for analyzing a proposed collective action. In the first stage, the

district court makes a preliminary inquiry into whether the plaintiff and the proposed group are

similarly situated.  Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192 (3d Cir. 2011),

reversed and remanded on other grounds, 133 S. Ct. 1523 (2013).[9] The putative class must be

"subjected to some common employer practice that, if proved, would help demonstrate a violation

of the FLSA." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 538 (3d Cir. 2012).

At this point, the burden of proof is low. Plaintiffs must make only a modest factual

showing, something beyond pure speculation, of a factual nexus between how the employer's

---

[9] The so-called "second stage" occurs after the notice period, and the court then makes "conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193 (citations omitted).

alleged policy affected them and how it affected other employees. Symczyk, 656 F.3d at 192. For the reasons below, Plaintiff has met this burden.

*First*, Defendants admit that for at least the last fifteen years no dancer has been paid any wage, much less the minimum wage. (*See supra Section A.1; Pero Dep. 75:6-15; 76:9-15*). According to Defendants, the reason for denying the dancers minimum wage is because "they're independent contractors," not employees. (*Pero Dep. 80:1-4*).

*Second*, Defendants concede they have a written policy confirming all dancers are subject to the same treatment as ICs. Indeed, Titillations  has a written policy regarding dancer classification, and every dancer is handed one upon hire that states in all capital letters: "YOU ARE CONSIDERED AN INDEPENDENT CONTRACTOR. YOU ARE NOT AN EMPLOYEE." (*Pero Dep. 37:9-38:12; see Dancer Info and Rules*). Mr. Pero conceded that this policy: (1) applies to all dancers; (2) has applied to all dancers for "a minimum of 15 years;" (3) is posted on the premises of Titillations for "the dancers to see;" (4) and this policy is distributed by hand to "every single" dancer on "the day they are hired."  (*Id. 37:9-39:6*).

*Third*, Defendants acknowledge that every other worker at Titillations, except the dancers, are paid the minimum wage or more. (*Pero Dep. 73:1-74:12*). In other words, only the dancers are denied the minimum wage. In fact, the bartenders are considered employees and are paid the minimum wage. (*Id.*). The same goes for the bar-backs, managers, DJs, kitchen staff and security. (*Id.*).  Just not the dancers, because as Mr. Pero testified, "[d]ancers [sic] are not employees." (*Pero Dep. 79:23-25*). Titillations' decision to classify the other staff differently than the dancers is key because it means that the dancers were treated similarly to each other but differently from everyone else. This is the very essence of being "similarly situated." Symczyk, 656 F.3d at 192.

This evidence conclusively establishes that all dancers were subject to a common policy that violates the FLSA.  The FLSA requires that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce," not less than the applicable minimum wage.  29 U.S.C.A. § 206 (West).[10]  Defendants concede that no dancers have been paid the minimum wage for at least the last fifteen years. That failure is a common policy — applicable to the putative collective — that violates the FLSA.

In a variety of cases where courts have granted conditional certification, the evidence was similar (or even less impressive) than the evidence here. For example, in Woods v. Club Cabaret, Inc., the court granted conditional certification based on declarations from dancers and independent contractor agreements, but apparently without admissions from the defendants. See Woods v. Club Cabaret, Inc., 140 F. Supp. 3d 775, 780-82 (C.D. Ill. 2015) (granting conditional certification of class of exotic dancers who all worked at same club with same working conditions and noting "[i]f these class members are not similarly situated, it is hard to imagine that a class could ever be conditionally certified"); Spellman v. Am. Eagle Exp., Inc., No. 10–1764, 2011 WL 4102301, at *1 n.1 (E.D. Pa. May 18, 2011) (granting conditional certification of collective action where named plaintiffs alleged that defendant violated the FLSA by misclassifying delivery drivers as independent contractors); Damassia v. Duane Reade, Inc., No. 04–8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[I]t may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' substantial allegations that

---

[10] Congress recognized that an employer's failure to pay the statutory minimum wage "may be so detrimental to the maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' that double payment must be made to compensate employees for losses they might suffer by not receiving their lawful pay when it was due." Brooks v. Vill. of Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999) (quoting and citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991).

they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy."); <u>Patton v. Thomson Corp.</u>, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005) (concluding that the similarly-situated standard was satisfied where plaintiff alleged that she had worked over forty hours per week without overtime compensation, that her positions was classified improperly as exempt, that other employees in her position had the same job duties, and that the employer had admitted it paid all employees in plaintiff's position in the same manner).

Here, like <u>Woods</u>, Plaintiff has submitted an undisputed declaration corroborated by Defendants' own 30(B)(6) witness. Plaintiff's deposition was unsurprisingly consistent with both. Further, Defendants had a written policy, handed to every single dancer upon hire, that states that they are independent contractors and not employees. Plaintiff was unable to find any case that requires multiple declarations from members of a putative collective where the Defendants have conceded that a class of employee was uniformly denied the minimum wage. <u>See</u> <u>Kelsey v. Entertainment U.S.A. Inc.</u>, 67 F. Supp. 3d 1061, 1065-66 (D. A.Z. 2014) (granting conditional certification where dancer declarations were left undisputed by defendants).  To require that here would be doubly improper, because Plaintiff has been denied **any** class discovery at all.

In <u>Guzman v. Three Amigos SJL Inc.</u>, the court noted that plaintiff declarations corroborated with other plaintiff declarations "constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA." <u>Guzman v. Three Amigos SJL Inc.</u>, 117 F. Supp. 3d 516, 523-27 (S.D.N.Y. 2015). Here, Plaintiff has more. Defendants themselves corroborated Plaintiff's declaration. In other words, everyone agrees that all dancers were subject to the same policy of being treated as independent contractors and not being paid any wage. Indeed, <u>Guzman</u> even cited several cases holding that a plaintiff need no more than the allegations in the

complaint and one supporting affidavit. See id. (citing Cheng Chung Liang v. J.C. Broadway Rest.,

Inc., 12 CIV. 1054, 2013 WL 2284882, at *2 (S.D.N.Y. May 23, 2013) ("For the purposes of this

motion, . . .  plaintiffs' evidence—in the form of [one employee's] affidavit—is sufficient to

establish that ... there may be class members with whom he is similarly situated."); Gonzalez v.

Scalinatella, Inc., 13 CIV. 3629 PKC, 2013 WL 6171311, at *2 (S.D.N.Y. Nov. 25, 2013) ("Courts

in this district have approved conditional collective action certification based on the facts alleged

in the complaint and one accompanying affidavit.") (collecting cases)). Here, it is hard to imagine

what more Plaintiff could offer to show that all dancers were subject to a common policy that

violated the FLSA.

### i. Defendants' Anticipated Arguments in Opposition Should Fail

In opposition to Plaintiff's previous motion for reconsideration, *ECF No. 39*, Defendants

argued that Plaintiff was not similarly situated to other Titillations dancers because: (1) she worked

at three different clubs who all denied Plaintiff the minimum wage, but she only sued Titillations;

(2) that Plaintiff used two different stage names; and (3) Plaintiff did not object to being classified

as an independent contractor while she worked at Titillations. These arguments are all irrelevant

to the test for conditional certification.

*First*, even if other clubs violated the law and misclassified their dancers, this has nothing

to do with whether Titillations violated the law by misclassifying **its** dancers.[11] Likewise, whether

---

[11] The misclassification of exotic dancers is rampant and unlawful. Virtually without exception,
reported cases considering this issue have found exotic dancers to be employees as a matter of law
and required the clubs to pay them the minimum wage. See, e.g., Shaw v. Set Enterprises, Inc.,
241 F. Supp. 3d 1318, 1327 (S.D. Fla. 2017) (finding exotic dancers were employees under FLSA
and Florida law); McFeeley v. Jackson St. Entm't, LLC, 825 F.3d 235, 241 (4th Cir. 2016)
(affirming district court holding exotic dancers were employees of dance clubs under the FLSA,
rather than independent contractors); Henderson v. 1400 Northside Drive, Inc., 110 F. Supp. 3d
1318, 1324 (N.D. Ga. 2015) (finding dancers not exempt from minimum wage and overtime
provisions of the FLSA); Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 912 (S.D.N.Y.

or not Plaintiff has sued her other employers has no bearing on whether Titillations subjected her and its other dancers "to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 538 (3d Cir. 2012).

*Second*, whether Plaintiff used different stage names at different clubs has no bearing on whether she is similarly situated to the dancers at Titillations. All that is necessary to meet the "similarly situated" burden is for Plaintiff to demonstrate some "factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other people." Symczyk, 656 F.3d at 193 (citations omitted). Here, Plaintiff maintains she was classified as an independent contractor and paid no wages. Defendant's corporate designee admitted that all dancers were classified as ICs for the last 15 years, and none were paid any wages during that time. (*See supra Section A.1; Pero Dep. 75:6-15; 76:9-15*).

*Third*, whether Plaintiff failed to object to being classified as an independent contractor while at Titillations does not have anything to do with whether — in fact — Titillations misclassified its dancers as independent contractors. Moreover, the FLSA contains no requirement that an employee invoke the FLSA or object to not being paid the minimum wage during employment.  See generally, 29 U.S.C.A. § 206 (West). Employees are entitled to the minimum wage regardless.

---

2013) (granting summary judgment to dancers on issue of misclassification); Thompson v. Linda and A. Inc., 779 F.Supp.2d 139, 151 (D.D.C.2011) (finding dancers to be employees and entitled to minimum wage as a matter of law under FLSA and DC labor laws); Clincy v. Galardi S. Enters., Inc., 808 F.Supp.2d 1326, 1343 (N.D. Ga. 2011) (finding as a matter of law dancers "should have been classified as employees under the FLSA"); Harrell v. Diamond A Entm't, Inc., 992 F. Supp. 1343, 1354 (M.D. Fla. 1997) ("The totality of the evidence before the Court indicates that [the club] employed Plaintiff [(a dancer)] as defined under the FLSA"); Reich v. Circle C. Invest., Inc., 998 F.2d 324, 329 (5th Cir. 1993) (affirming district court determination that dancers are employees).

Simply put, there is now no dispute about whether the dancers are similarly situated. But, the Court need not take Plaintiff's word for it anymore, because Defendants' own corporate representative admitted that all dancers are classified as independent contractors, are denied the minimum wage, and that has been Titillations policy for at least fifteen years. Thus, Plaintiff and the proposed class are similarly situated, and this case warrants conditional certification.

**B.      Plaintiff's Proposed Notice is Necessary and Proper**

The Court's intervention is necessary now because the claims of the potential opt-in plaintiffs are being extinguished or diminished every day due to the statute of limitations. *See* 29 U.S.C. § 256(b); Herring v. Hewitt Assocs., Inc., 2007 WL 2121693, *7 (D.N.J. July 24, 2007) (noting plaintiffs' argument that notice was necessary to stop erosion of claims by statute of limitations).

Unlike Rule 23 class actions, in § 216(b) collective actions, the statute of limitations for those who have not filed consent forms does not toll with the start of the action. Symczyk, 656 F.3d at 200.  As a result, the statute of limitations continues to run on each individual's claim until they file a consent form with the Court. Id. Thus, every day that passes is a day of damages each potential plaintiff will be unable to recover.

Here, plaintiffs' proposal for court-approved notices to potential opt-in plaintiffs meets the timeliness, accuracy and informational requirements established by the Supreme Court in Hoffman-La Roche. Id. at 172. The proposed notice describes the lawsuit, informs all individuals who have worked as exotic dancers for Defendants of their opportunity to "opt-in," instructs them how to opt-in, and notifies them of the effect of their decision to opt-in. This court approved the content and substance of Plaintiffs' proposed notice (with minor modifications) in Pearsall-Dineen

v. Freedom Mortgage Corp., 27 F. Supp. 3d 567, 574 (D.N.J. 2014) and Plaintiffs used the notice in that case as a template for their proposed notice here.

## II.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

### A.     The Legal Standard

In addition to Plaintiff's FLSA claims for which she seeks conditional certification of a collective (an opt in class), Plaintiff also seeks Rule 23 class certification of her state law claims under the NJWHL. Rule 23 permits "[o]ne or more members of a class [to] sue ... as representative parties on behalf of all members" of the class. FED. R. CIV. P. 23(a). In this Motion, Plaintiff must demonstrate that the "putative class meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories under which [the plaintiff] wishes to proceed on behalf of a class." Bobryk v. Durand Glass Mfg. Co., 50 F. Supp. 3d 637, 642 (D.N.J. 2014) (citations omitted).

According to the Third Circuit, a "party seeking class certification must first establish the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; (4) adequacy. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 n. 6 (3d Cir.2008) (citations omitted).

Once these requirements are satisfied, one of three types of classes may be certified as set forth in Rule 23(b). See Fed. R. Civ. P. 23(b)(1)-(3). Here, Plaintiff seeks to certify a class under Rule 23(b)(2) and Rule 23(b)(3).

A Rule 23(b)(3) class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Bobryk, 50 F. Supp. 3d at 643 (citing Fed. R. Civ. P. 23(b)(3)). Factual findings under Rule 23 are judged using a preponderance of the evidence standard. Id. (citations omitted).

A 23(b)(2) class is designed to offer class treatment for claims seeking injunctive relief. Stewart v. Abraham, 275 F.3d 220, 228 (3d Cir. 2001) (citing Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir.1994)). These injunctive relief classes are appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

**B.     This Case is Well Suited For Class Treatment**

"[C]lass actions serve an important function in our system of civil justice." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99 (1981); see also, generally 7A Charles A. Wright, et al., Federal Practice and Procedure § 1751 (3d ed. 2005) ("Federal Practice and Procedure"). "Class actions provide those holding nominal claims with a cost-effective way of seeking redress: proving the claim of the class representative also proves the claim of every class member." Ritti v. U-Haul Int'l, Inc., No. 05-CV-4182, 2006 WL 1117878, at *3 (E.D. Pa. Apr. 26, 2006). While Rule 23 is to be "liberally construed" in favor of certification, the court must conduct a "rigorous analysis and [make] findings that the class satisfies all the requirements of Rule 23." In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 781-82 (3d Cir. 2009). As shown below, Plaintiff's state law claims merit class certification.

Indeed, the New Jersey Supreme Court has recognized "[w]hen one inflicts minor harm across a dispersed population, the defendant is, as a practical matter, immune from liability unless a class is certified." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 105 (2007) (quotations and citations omitted). In this case, a class should be certified so that hundreds of aggrieved employees may seek redress without fear that their economic interests are too small to justify costly litigation.

C.      **Plaintiff Meets the Requirements of Rule 23(a)**

        i.      *The Proposed Class Is Sufficiently Numerous Because it Numbers in the Hundreds*

While there is no "minimum number of plaintiffs is required to maintain a suit as a class action . . . generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." <u>Stewart</u>, 275 F.3d at 227 (citations omitted). Here, Defendants concede that at least 90 different dancers work on any given week. (*See supra Section A.3*). Moreover, in a sampling of just two different two-week spans in two different years, Titillations employed at least 120 different dancers during the class period. (*Id.*). Suffice it to say, the numerosity requirement of Rule 23(a) is met here because the joinder of even 90 exotic dancers would be impractical. See <u>Rivet v. Office Depot, Inc.</u>, 207 F. Supp. 3d 417, 429 (D.N.J. 2016) (finding numerosity requirement satisfied where classes contained 35 and 49 members).

       ii.      *All of Plaintiff's State Law Minimum Wage Claims Present Questions of Law and Fact Common to the Class*

The commonality requirement of Rule 23(a) is satisfied if "there are questions of law or fact similar to the class." <u>Id.</u> (citations omitted). If the named plaintiff shares even "one question of fact or law with the grievances of the prospective class," that plaintiff will meet this requirement. <u>Id.</u> (citations and quotations omitted). Indeed, the "threshold of commonality is not high." <u>Id.</u> (quoting <u>In re Sch. Asbestos Litig.</u>, 789 F.2d 996, 1010 (3d Cir.1986)). "What matters to class certification ... is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011) (quotations and citations omitted). For this case, the common legal issue of whether Titillations' dancers should be classified

18

as employees or independent contractors will drive the resolution of the litigation; in fact, it will be outcome determinative. Either the dancers were employees or they were not. If the dancers were employees, then they were unlawfully denied the minimum wage.

Defendants' admitted policy of not paying their dancers any wages is based upon Defendants other admitted policy of uniformly classifying all dancers as ICs. This is precisely the type of unifying thread that satisfies Rule 23(a)(2). See, e.g., Williams v. Jani-King of Philadelphia Inc., 837 F.3d 314, 325 (3d Cir. 2016) (holding "misclassification claim can be resolved by the evidence that is common to the class"); see Hart v. Rick's Cabaret Int'l Inc., 09 CIV 3043 JGK, 2010 WL 5297221, at *6 (S.D.N.Y. Dec. 20, 2010) (certifying class of exotic dancers after finding commonality based upon the defendants' "policy of characterizing entertainers as independent contractors, rather than employees.").

New Jersey law actually **presumes** an "individual is an employee unless the employer can make certain showings regarding the individual employed." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 305 (2015).  Simply said, if the purported employer cannot show an individual "has been and will continue to be free from control or direction over the performance of such service," then that individual will be deemed an employee. Id.

Here, Titillations' extensive level of control was the same for all dancers. (*See supra Section A.1-2*). All dancers were subject to the same exact rules and policies, including: what shifts they could work; what outfits they could wear; how much time they must spend on stage; when they had to take their clothes off; how much they could charge for private dances; and how much they had to pay back to the club and the DJ's. (*See supra Section A.2*). Defendants conceded that every single rule in effect at Titillations applied to every single dancer. (*Id.*). When asked if every dancer is given a copy of the Dancer Info and Rules upon hire, Mr. Pero responded, "[e]very single

one." (*Pero Dep. 39:2-6*). And when asked whether the Dancer Info and Rules apply to all dancers, Mr. Pero responded "[y]es they do." (Pero Dep. 38:8-10). Even in Defendants' answer, they specifically deny the allegation that "[a]t all relevant times Plaintiff and each member of the Class were current or former employees of Defendants under the FLSA and applicable state wage and hour laws." (*Compare ECF No. 1, ¶ 26 and ECF No. 11, ¶ 26*).   Said simply, the Court's determination of the propriety of Defendants' IC classification will not vary from dancer to dancer. This meets the commonality element.

Despite Defendants' admissions and concessions on these points, Defendants will likely argue that the level of control exercised by Titillations will vary from dancer to dancer. However, that argument has been consistently rejected when an employer has subjected all class members to a uniform classification. Williams, 837 F.3d at 325 (finding "the employment status question can be resolved in this case through evidence common to the class," *e.g.*, defendants' "policies manual, and training manual"); Jones v. Cruisin' Chubbys Gentlemen's Club, 17-CV-125-JDP, 2018 WL 1175412, at *3 (W.D. Wis. Mar. 6, 2018) (finding commonality because "the question whether defendants are misclassifying the dancers is central to determining liability, it makes sense to allow plaintiffs to proceed as a class"); Hart, 2010 WL at *6 (finding commonality in exotic dancer misclassification case); Houston v. URS Corp., 591 F. Supp. 2d 827, 832-33 (E.D. Va. 2008) (certifying class of ICs and rejecting employer's effort to claim individual differences prevailed, stating "[t]he Court finds it disingenuous for [Defendant], on one hand to collectively and generally decide that all [employees] are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming that plaintiffs cannot proceed collectively to challenge the exemption."); Delgado v. Ortho-McNeil. Inc., No. 07-263, 2007 WL 2877238, at *2 (C.D. Cal. Aug. 7, 2007) (certifying a class "first and foremost" because of the blanket classification imposed

by defendant); <u>Nerland v. Caribou Coffee Co. Inc.</u>, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) ("Defendants contention that the claims in this case require individualized fact-intensive inquiries into each store manager's daily activities is wholly inconsistent with its own established internal policies and practices" of uniformly classifying such individuals as exempt).

To be sure, Defendants' decision to classify all other positions at Titillations (*e.g.*, bartenders, barbacks, security DJs) as employees while singling out dancers for treatment as ICs means even Defendants think that a "degree of homogeneity exists among" class members. <u>In re Wells Fargo Home Mortg. Overtime Pay Litigation</u>, 571 F.3d 953, 957 (9th Cir. 2009).

In light of the above evidence, Plaintiff has met the commonality requirement of Rule 23(a).

### iii.   *All of Plaintiff's State Law Minimum Wage Claims Are Typical of the Class*

The typicality inquiry looks to "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 295-296 (3rd Cir. 2006) (<u>quoting</u> <u>Baby Neal</u>, 43 F.3d at 55). Generally, typicality lies where the claims of a class representative arise from the same course of conduct and pursue the same legal theories as the claims of other class members. <u>Id.</u> The Third Circuit recently taught us that:

> the proper consideration in assessing typicality... include[s] three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

<u>In re Schering Plough Corp. ERISA Litig.</u>, 589 F.3d 585, 596-97 (3d Cir. 2009). This case meets all of the typicality factors.

*First,* as discussed above with respect to commonality, Plaintiff and the proposed class challenge their uniform misclassification as ICs. The legal theories are not just similar, they are identical. Indeed, "in instances . . . where it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong presumption that the claims of the representative parties will be typical of the absent class members." Weisfeld v. Sun Chem. Corp., 210 F.R.D. 136, 140 (D.N.J. 2002). "Cases challenging the same unlawful conduct which affects . . . the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." Massie v. U.S. Dept. of Housing and Urban Development, 246 F.R.D. 490, 494 (W.D. Pa. 2007) (quoting Baby Neal, 43 F.3d at 58).

*Second*, there are no unique defenses here. Titillations has only one defense – that the dancers are properly classified as ICs.

*Third*, Plaintiff and the class members share the same incentives to expose Defendants' violation of the wage and hour laws. See Massie, 246 F.R.D. at 494-95 ("If Plaintiffs were to prevail in this litigation, all members of the class would gain the same opportunities . . . ."). Defendants' unlawful policies violated state wage and hour laws, and those violations apply to all members of the proposed class equally. Further, Plaintiff and the proposed class have all suffered the same legal injury by, among other things, being denied the minimum wage.

          iv.    *Plaintiff and her counsel meet the adequacy requirement*

Plaintiff also meets Rule 23(a)(4)'s adequacy of representation requirement. The Supreme Court instructs that this element "serves to uncover conflicts of interest between named parties and the class they seek to represent" and serves as a catch-all requirement that "tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." Amchem Products, Inc. v. Windsor, 521

U.S. 591, 625 (1997); see also Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 389 (D.N.J. 1998) ("The typicality inquiry under Rule 23(a)(3) and the alignment of interest inquiry under Rule 23(a)(4) tend to merge.") (citing Georgine v. Amchem Products, Inc., 83 F.3d 610, 632 (3d Cir.1996), aff'd 521 U.S. 591 (1997)).

The adequacy requirement involves a two-pronged inquiry: it looks to (1) whether the representative's interests are antagonistic to those of the class; and (2) whether the attorneys for the class representatives are capable of and qualified to represent the entire class. Beck v. Maximus, Inc., 457 F.3d 291, 296 (3rd Cir. 2006); Baby Neal, 43 F.3d at 55.

*First*, there is no antagonism between Plaintiff and the other dancers. Plaintiff and the other dancers in the proposed class were all misclassified and denied the minimum wage. There is no variation between them and no evidence Plaintiff is seeking to maximize her own recovery at the expense of the class. See, e.g., Hart, 2010 WL  at *6 (certifying class of exotic dancers in misclassification case and finding adequacy where "no credibly claim that" plaintiffs' interests were "antagonistic" to class);

*Second*, "the plaintiff's attorney" is "qualified, experienced, and generally able to conduct the proposed litigation." Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975). Plaintiff's firm has experience in class and collective actions, specifically in the wage and hour context. (*Markowitz Decl. ¶¶ 12-13*). Further, Plaintiff's counsel has been vigorously pursuing this case at every turn. Accordingly, Plaintiff and her counsel meet the adequacy requirement.

Having established that Plaintiff meets all the requirements of Rule 23(a), Plaintiff must also show the class meets the requirements of Rule 23(b).

**D.**  **Plaintiff Meets the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) has several additional requirements that must be met for a class to be certified. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Rule 23(b)(3)'s predominance inquiry asks whether the proposed class is "sufficiently cohesive to warrant adjudication by representation, and assesses whether a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Sullivan v. DB Inv., Inc., 667 F.3d 273, 297 (3d Cir. 2011) (quotations omitted). But while this inquiry involves examining the elements of a plaintiff's claims "through the prism of Rule 23," Summerfield v. Equifax Info. Servs. LLC, 264 F.R.D. 133, 142 (D.N.J. 2009) (quotations omitted), Rule 23(b)(3) "does **not** require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 469 (2013) (emphasis in original, quotations omitted, brackets omitted).  Rather, Rule 23(b)(3) merely requires "that common questions predominate over any questions affecting only individual class members." Id. (emphasis in original, quotations omitted).

      i.    *The Question of the Propriety of Defendants' Classification of the Dancers Predominates Over All Other Questions*

Time and again the issue of classification — the central issue here — has warranted a finding of predominance, and this case is no different. For example, in Mendoza v. La Belle Farm. Inc., the court found that where the issues to be litigated included "whether class members . . . were supposed to be paid the minimum wage as a matter of law and were not" was "about the most

24

perfect questions for class treatment."  239 F.R.D. 363, 373 (S.D.N.Y. 2007); see also Williams, 837 F.3d at 321 (affirming district court finding of predominance in misclassification case because class claims could be proven through common evidence of control); Rivet, 207 F. Supp. 3d at 431 (finding predominance of common questions in exemption misclassification case); DeGidio v. Crazy Horse Saloon & Rest., Inc., 4:13-CV-02136-BHH, 2017 WL 5624310, at *15 (D.S.C. Jan. 26, 2017), aff'd and remanded sub nom. Degidio v. Crazy Horse Saloon & Rest. Inc., 880 F.3d 135 (4th Cir. 2018), cert. denied sub nom. Crazy Horse Saloon & Rest., Inc. v. Degidio, 138 S. Ct. 2666 (2018) (finding predominance in exotic dancer misclassification case where "Defendant applies the same pay policies and practices to Plaintiff and each of the class members"); Atis v. Freedom Mortgage Corp., CV 15-3424 (RBK/JS), 2016 WL 7440465, at *6 (D.N.J. Dec. 27, 2016) (finding predominance in misclassification case where class members "hold the same job title" and "overwhelmingly" have the same job responsibilities); Goldman v. Radioshack Corp., CIV.A. 03-0032, 2005 WL 1124172, at *4 (E.D. Pa. May 9, 2005) (holding that predominate legal issue in action is whether managers were wrongfully classified as exempt and denied overtime wages); Tierno v. Rite Aid Corp., No. C 05-02520, 2006 WL 2535056, at *9-10 (N.D. Cal. Aug. 31, 2006) (finding predominance where employer treated proposed class as "one homogenous group") (internal quotations omitted); Ansoumana v. Gristedes Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001) (finding predominance where central issues in case were whether plaintiffs were employees or ICs, and the "consequences of the resolution of that issue in relation to minimum wage").

Here, one common question predominates over all others: Are the hundreds of dancers who Titillations classified as ICs really employees? Defendants concede that all exotic dancers were subject to the same rules, performed the same duties in the same way at the same location, and were all denied the minimum wage. Since the principal question in this case is whether or not

Defendants' misclassified all dancers as ICs for the last 15 years, the predominance requirement is met.[12]

    ii.    *The Class is Readily Ascertainable*

An implicit requirement to class certification is that plaintiff's proposed class definition must be precise, objective, and readily ascertainable. See Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013) ("[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."). Plaintiff seeks to certify a class of "all persons who worked at Titillations as exotic dancers at any time three years prior to the filing of the Complaint until entry of judgment in this case." Here, the class shares precise objective criteria: they either danced at Titillations during the class period or they didn't.  Defendants' maintained an online schedule that listed the dancer's stage name, the day she was scheduled to work, and the shift she was scheduled to work. (*See, e.g., Markowitz Decl., Exs. D-E*). Thus, the class is ascertainable.

    iii.    *Class Treatment Is Superior to All Alternatives*

The final prerequisite for class certification is that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. FED. R. CIV. P. 23(b)(3). "The superiority requirement asks the court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication.'" In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 316 (3d Cir. 1998) (quoting Georgine v. Amchem Products, Inc., 83 F.3d 610 (3d Cir.1996)).  The Rule identifies the

---

[12] Defendants will probably argue that the potential presence of individual issues regarding damage calculations are sufficient to defeat class certification. They will be wrong, because "some individualized calculation of damages is frequently required in class cases, yet that rarely defeats class certification where common issues predominate as to liability." Clark v. Prudential Ins. Co. of Am., 940 F. Supp. 2d 186, 191 (D.N.J. 2013).

following factors that support such a finding: (1) the interest of individual class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any previously commenced litigation concerning the controversy; (3) the desirability or undesirability of concentrating the litigation of the claims in a single forum; and (4) the difficulties likely to be encountered in the management of a class action. Id. Each of these factors supports superiority here.

It is unlikely that there is great interest by individual class members to control separate actions given the relatively low value of each proposed class members' claim and the high costs associated with prosecuting these cases. Admittedly, Plaintiff's and the proposed class members' individual damages may be relatively small. For example, Plaintiff estimates her own damages (without accounting for liquidated damages) from $3,754.24 on the low end to $6,150.92 on the high end. (*Markowitz Decl., Ex. G*). But it is diffuse, relatively modest economic damages across numerous potential plaintiffs that makes a class action the superior method for adjudicating this case.  In cases like this, courts often find that the "relatively small amount at stake for each claimant vitiates any argument that each has an interest in controlling the prosecution of the case." In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 191 (D.N.J. 2003) (citations omitted); cf. D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ("It is appropriate for the court to consider [(for Rule 23(b)(3) classes)] "inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually."). That is true here. Given the relatively modest amounts of damages due to each potential class member, a class action is the **only** meaningful way that these victims may be compensated.

27

Further, individual litigation of the claims here could lead to inconsistent results that would (1) establish incongruous standards of conduct for Defendants, and (2) bind future litigants. A variety of different determinations regarding whether dancers are properly classified as ICs or employees would create an unworkable patchwork of requirements with which Defendants would have to comply. That is just another reason why class resolution of this case is superior to individual suits.

Many of the courts to consider whether class actions were the superior resolution device in exotic dancer misclassification cases have answered the question in the affirmative. In Hart v. Rick's Cabaret Int'l Inc., for example, the court found that a class action was the best available method of adjudicating the claims of the class members because: (1) "the value of each individual claim is small compared to the possible costs associated with pursuing it;" (2) the "assumed socioeconomic status of the proposed class members;" and (3) because "members of the putative class who currently work as [dancers] for the defendants may be reluctant to pursue any claims against the source of their current income." 2010 WL 5297221, at *7.   In DeGidio, the court certified a class of misclassified exotic dancers and found that a class action was superior, in part, because "there is no difficulty in certifying this case as a class action, as evidenced by other courts that have certified similar classes of exotic dancers bringing substantially similar wage claims against defendant strip clubs." 2017 WL 5624310, at *15 (citing Bonton v. Centerfold Entm't Club, Inc., 6:14-CV-6074, 2015 WL 2380300, at *1 (W.D. Ark. May 19, 2015) (certifying class of exotic dancers alleging violations of Arkansas Minimum Wage Act); Ruffin v. Entm't of the E. Panhandle, No. 11-19, 2012 WL 5472165 (N.D. W. Va. Nov. 9, 2012) (certifying class of exotic dancers alleging violations of West Virginia Payment and Collection Act); Hart, 2010 WL 5297221, *6 (certifying class of exotic dancers alleging violations of New York Labor Laws);

Flynn v. New York Dolls Gentlemen's Club, 13 CIV. 6530 PKC RLE, 2015 WL 3916161, at *1 (S.D.N.Y. Apr. 28, 2015) (certifying class of exotic dancers for settlement purposes, alleging violations of New York Labor Laws); In re Penthouse Executive Club Comp. Litig., 10 CIV. 1145 KMW, 2014 WL 185628, at *4 (S.D.N.Y. Jan. 14, 2014) (certifying class of exotic dancers for settlement purposes)); see also Cruisin' Chubbys Gentlemen's Club, 2018 WL 1175412, at *7 (finding superiority requirement met in exotic dancer misclassification case and certifying class).

The other superiority factors also support certification. There are no other litigations concerning Titillations' unlawful denial of minimum wages to its employees. Titillations has only one location — New Jersey — so concentrating the litigation here is desirable. And there are no difficulties in managing the class. Accordingly, a class action is the superior vehicle to adjudicate these claims and the Court should certify a Rule 23(b)(3) class of Titillations dancers.

**E.    Plaintiff Meets the Requirements of Rule 23(b)(2)**

Last, but perhaps most important of all, Plaintiff seeks injunctive and declaratory relief in this matter, and an injunctive class should be certified pursuant to Rule 23(b)(2). Plaintiff seeks to certify a class of only *current* Titillations exotic dancers under Rule 23(b)(2), as the prospective relief sought would only to them and  future dancers.

Here, Plaintiff claims Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class." FED. R. CIV. P. 23(b)(2). Specifically, Plaintiff seeks (1) a declaration that Defendants have been violating the law, and (2) a permanent injunction barring them from continuing to do so. Money damages would be little consolation if Defendants are permitted to go on violating the law with impunity.

To merit Rule 23(b)(2) certification, the class must be sufficiently cohesive such that the injuries to be remedied are group injuries, and the class must be bound together by either a

preexisting or continuing legal relationship or by some significant common trait. <u>Barnes v. American Tobacco Co.</u>, 161 F.3d 127, 143, n. 18 (3d Cir. 1998). This "cohesiveness" requirement is easily met where the class members — as they are here — are subject to a uniform practice or policy that is being challenged as unlawful. <u>See</u>, <u>e.g.</u>, <u>Clarke v. Lane</u>, 267 F.R.D. 180, 199 (E.D. Pa. 2010).

Here, the class is cohesive. All class members were subject to Defendants' uniform policy of misclassifying them as ICs and denying them the minimum wage. A permanent injunction prohibiting Defendants from misclassifying dancers and requiring Defendants to pay the minimum wage remedies a classic group injury.[13]

## **<u>CONCLUSION</u>**

For all these reasons, the Court should: (i) conditionally certify a  collective action comprised of a class of exotic dancers of Defendant Banc Jack & Joe, LLC d/b/a Titillations Go-Go-Bar ("Titillations") for the three years preceding the filing of the Complaint; (ii) compel the production of names and addresses of such prospective members for the effective dissemination of notice as soon as possible to prevent claims from becoming time-barred; (iii) require the issuance of Court-authorized notice to the conditional class members of the class; (iv) certify a Rule 23(b)(3) class action for the state law wage claims of all *current and former* exotic dancers who danced at Titillations anytime in the three years preceding the Complaint up until judgment is entered in this case; and (v) certify a Rule 23(b)(2) class of all *current* Titillations exotic dancers.

---

[13] For all of the same reasons that Plaintiff's State wage and hour claims should be certified as a class, so should Plaintiff's state common law claims *e.g.*, unjust enrichment and fraud. As discussed above, each dancer was handed the Dancer Info and Rules upon hire, and that document contained a misrepresentation that the dancers were independent contractors. That is a class-wide fraud. Similarly, if Plaintiff and the proposed class and collective were misclassified, then Defendants were unjustly enriched in the same manner across the board.

Respectfully submitted,

By:  _/s/ Lucas A. Markowitz_
Charles X. Gormally, Esq.
cgormally@bracheichler.com
Lucas A. Markowitz, Esq.
lmarkowitz@bracheichler.com
**BRACH EICHLER L.L.C.**
101 Eisenhower Parkway
Roseland, NJ  07068
Telephone: (973) 228-5700

Dated: April 29, 2019