# EXHIBIT F

Page 1

```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
 2              CIVIL ACTION NO 2:17-cv-03843-KSH-CLW
 3
    JANE DOE 1, individually and                CONDENSED
 4  on behalf of all other persons              TRANSCRIPT
    similarly situated,
 5
         Plaintiff,
 6                                              DEPOSITION OF:
         v.
 7                                              "JANE DOE"
    BANC, JACK & JOE, LLC d/b/a
 8  TITILLATIONS GO-GO BAR, BANC PERO,
    JOSEPH CARERI, JACK PERO, ABC
 9  COMPANIES 1-10 and JOHN DOES 1-10,
10       Defendants.
11  - - - - - - - - - - - - - - - - -
12              TRANSCRIPT of the stenographic notes of
13  the proceedings in the above-entitled matter, as
14  taken by and before JANE A. GARBUS, a Certified
15  Court Reporter of the State of New Jersey, held at
16  the office of BRACH EICHLER, LLC, 101 Eisenhower
17  Parkway, Roseland, New Jersey, on November 14, 2018,
18  commencing at 10 a.m.
19
20
21
22
23
24
25  Job No. NJ3123210
```

Page 2

1  APPEARANCES:
2
   BRACH EICHLER, LLC
3  101 Eisenhower Parkway
   Roseland, New Jersey 07068
4  973-228-5700
   BY: LUCAS A. MARKOWITZ, ESQ.
5  lmarkowitz@bracheichler.com
   Attorneys for Plaintiffs
6
7  FLORIO PERRUCCI STEINHARDT & CAPPELLI, LLC
   235 Broubalow Way
8  Phillipsburg, New Jersey 08865
   908-878-0131
9  BY: PADRAIG P. FLANAGAN, ESQ.
   pflanagan@floriolaw.com
10 Attorneys for Defendant
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1           INDEX
2
   EXAMINATION                         PAGE
3
   "JANE DOE"
4
5  BY MR. FLANAGAN                     4, 125
6  BY MR. MARKOWITZ                    124
7
8
           EXHIBITS
9
   EXHIBIT NO.   DESCRIPTION           IDENT.
10
11 P-1    Titillations Application     7
12 P-2    Titillations Application     19
13 P-3    Plaintiffs' Initial Disclosures  53
14 P-4    Titillations Applications    65
15 P-5    Photographs                  100
16 P-6    T-Mobile Phone Records       119
17        (Exhibits retained by the Reporter.)
18
19
20
21
22
23
24
25

Page 4

1  "JANE DOE", having been duly sworn according to law,
2  testifies as follows:
3  EXAMINATION BY MR. FLANAGAN:
4      Q   Good morning, "Ms. Doe". My name is
5  Patrick Flanagan. I'm with the law firm of Florio
6  Perrucci Steinhardt & Cappelli, and we represent the
7  defendants in this matter in the lawsuit that you
8  have filed. We're here to take your deposition
9  today. I thank you for coming from Florida on such
10 a cold day. I hope you get out tomorrow okay or
11 whenever you're going back.
12         Have you ever had your deposition taken
13 before?
14     A   No.
15     Q   I'm going to be asking you some questions
16 about the case, and you're going to be responding to
17 my questions, and it will all be recorded by the
18 court reporter, and it will all be transcribed in a
19 book.
20         You are under oath. We're in a very
21 informal atmosphere, but just so you know, you still
22 are under oath as if you were under oath in a court
23 of law, so your testimony could be used at a later
24 date, whether at a motion, hearing, trial, so it's
25 important that your answers be truthful and

Page 5

1  accurate. Do you understand?
2      A   Yes.
3      Q   Okay. If for any reason you don't
4  understand one of my questions, please let me know
5  and I'll be happy to rephrase it. Okay? If you do
6  answer my question, we're going to assume you
7  understood it. Okay?
8          You're nodding, and that's fine right
9  now --
10     A   Okay, yes. I was waiting until you
11 finished.
12     Q   That's fine. That was going to be my next
13 instruction. It's important all your responses be
14 verbal. This way the court reporter can transcribe
15 your responses. We're almost having a dialogue and
16 you're following me and I'm doing all the talking
17 right now, it's just important to have all your
18 responses verbalized. Is that understood?
19     A   Yes.
20     Q   If for any reason -- before we get to
21 that, it's important also, since we're in a
22 deposition, that you do your best to allow me to
23 finish my question before providing an answer, and
24 I'm going to do my best, I'm not always very good at
25 it. Sometimes I think you're done with your answer

2 (Pages 2 - 5)

Page 42

1  A  Yes.
2  Q  That was a requirement?
3  A  Yes.
4  Q  Who would you call into?
5  A  A line that they have a number.
6  Q  Okay. Was there a --
7  A  Or the club number. You needed to get in contact with somebody the day before or the day of, either one.
10  Q  Okay. Was there always someone there to answer the phone?
12  A  Yes.
13  Q  There was? Okay.
14  A  If not, there would be a machine.
15  Q  Okay. If someone, for whatever reason, wasn't available, did you just confirm by leaving a voice-mail message on the machine?
18  A  By leaving the voice message. The only issue you would have with them is if you were late or if you didn't come at all.
21  Q  Right.
22  A  And you had to be 20 minutes early.
23  Q  Okay. Was there ever an instance that you can recall where you had to call and say, "Look, I can't appear because my child is sick and I have to

Page 43

1  stay home" or anything like that, as an example?
2     MR. MARKOWITZ: You can answer.
3  A  Yes.
4  Q  Okay. And when you called to cancel, would you be calling the same number or a different number?
7  A  No. I would be call the same one.
8  Q  Okay. Did you ever get a yellow sticker?
9  A  Yes, I did.
10  Q  What would happen after you get a yellow sticker?
12  A  You automatically get on their bad side. That's number one. They tend to put the finger on you, watch you a little more, see if you give them any more problems. You can't be late again. It gets bad from there. You don't really want to do that.
18  Q  Now, if you happened to be late again?
19  A  Fired immediately.
20  Q  You mentioned a pink sticker. What happens with a pink sticker?
22  A  The pink slip is more if the girls have an argument, and they can't settle it out, that's where you get suspended. You know? It's --
25  Q  So I don't want to -- the pink slip has

Page 44

1  nothing to do with attendance, necessarily?
2  A  Not necessarily. That's more of the yellow slip.
4  Q  Okay.
5  A  You know?
6  Q  Fair to say --
7  A  When they want to let you go, they will let you go.
9  Q  Two yellow slips and you're out?
10  A  Yes.
11  Q  Did you ever get two yellow slips?
12  A  No.
13  Q  Why did you leave Titillations?
14  A  I did not leave. I was fired.
15  Q  Okay. Why were you fired?
16  A  Because I failed to pay the house fee.
17  Q  And if I understand correctly, the house fee was $30?
19  A  No. $35 for the house and $10 for the DJ.
20  Q  I take it that before you were fired, you had always paid the house fee?
22  A  Yes.
23  Q  And was there a reason why you didn't pay the house fee that caused you to be fired?
25  A  You know, there was times where I wouldn't

Page 45

1  make enough money to even take home to my family, but I chose to pay them because it's my job. It's the only job I had, and I figured maybe the next day would be better, but it got so bad after I got that yellow slip, it just felt overwhelming. And you know, I really had a bad night that day, and I just said this is either for my kids -- for my kid or for them. And I tried to explain that to them. They wouldn't care. They wouldn't budge, so it's their way and I was fired. But I believe it was because the yellow slip.
12  Q  Okay.
13  A  They -- sorry. They also say that they have a lot of girls coming in and out all the time, so they don't really need someone that couldn't provide their house fees.
17  Q  When did you approach lawyers about your employment or your work at Titillations?
19     MR. MARKOWITZ: I'll just step in here. You can answer the question as to when you approached lawyers, but any discussions that we had, you cannot answer that. That's protected. Okay?
23  Q  Absolutely. I don't want to know anything that you may have discussed. I'm just trying to figure out in terms of chronology what happened

Page 106

1 the bathroom, which is why that door is there.
2    Q   Okay.
3    A   That whole room is covered with glass.
4 That's why you can see the rest of it. That's where
5 we get dressed, keep our baggage, do our makeup, use
6 the bathroom. So this bathroom is our original
7 bathroom. We're not really supposed to be going
8 downstairs. We're supposed to be coming up here.
9 Downstairs is for the people, the customers.
10   Q   Okay. So this is a picture you had taken
11 in the dressing room?
12   A   Yes. That's me holding that bag, taking
13 that picture.
14   Q   Okay. And what is in that bag?
15   A   My work stuff; my shoes, my outfits.
16   Q   Okay.
17   A   The four outfits, the two pairs of shoes.
18   Q   Would this have been taken before or after
19 your shift?
20   A   I had just gotten there 12:53. Not just
21 gotten there. I had to -- yeah. I would have just
22 gotten there because I'm still clothed.
23   Q   And the shift that would have started at
24 12 o'clock?
25   A   Yeah. I actually got in trouble for

Page 107

1 taking some time upstairs.
2    Q   When you say "taking some time upstairs,"
3 do you recall what you were doing?
4    A   Getting ready. Here's the thing: When
5 you walk in and you sign in with the manager, he
6 clocks you.
7    Q   Right.
8    A   He knows what time you walked in.
9    Q   You're supposed to be there 30 minutes
10 before the shift?
11   A   Regardless. He clocks you on that paper,
12 and he gives you 30 minutes to come downstairs. If
13 not 30, maybe 35 the most.
14   Q   Okay. Is it fair to say that you would
15 have been late on January 7?
16   A   Yeah. I think that's the first ticket I
17 got.
18   Q   This is the first yellow ticket?
19   A   That was it. If not -- you know, I'm not
20 sure. If it wasn't the ticket situation here, it
21 was the -- I definitely just got verbal warning for
22 being late, yes.
23   Q   Was it uncommon to get a verbal warning
24 first?
25   A   Yeah, but the reason they gave me the

Page 108

1 verbal warning was because I was already there. You
2 can't send me home with a pink slip, yellow slip
3 because I'm already there, so I just extended myself
4 a little bit because I have to use the restroom,
5 change my makeup. I don't come with makeup. It
6 takes time to get ready. Also, put on my clothes,
7 my shoes, walk downstairs. This is upstairs, so.
8        Not only that, when I come downstairs, I
9 have to go to the DJ before I come to him and also
10 sign myself with him. That takes some time to walk
11 to the whole other side of the club, and then I come
12 sign in again with the managers, and that's when I'm
13 on a full rotation.
14   Q   When you say "a full rotation," what do
15 you mean by that?
16   A   Fifteen minutes on stage, 15 minutes
17 around the bar, and that's it. That's the rotation,
18 30 minutes.
19   Q   After the rotation, what happens next?
20 You're working a seven-hour shift. Is that right?
21   A   Yes.
22   Q   So what do you do after the 30-minute
23 rotation?
24   A   The 30 minutes that I have left to myself,
25 I have to use the restroom, I can make money, I can

Page 109

1 be on the phone, I can do whatever I want. That is
2 my free time, but that is where I prefer to be
3 making my money, and it becomes a problem because
4 that would be my break. We don't get a break, so
5 that --
6    Q   You could use a break, though, right? You
7 could get a break if you wanted to?
8    A   No.
9    Q   You have a 30-minute shift rotation?
10   A   Yes.
11   Q   Right? And you are working a seven-hour
12 shift?
13   A   Yes.
14   Q   And then you said the next 30 minutes you
15 can do whatever you want?
16   A   I'm working a seven-hour shift, but I'm
17 not necessarily making money for seven hours.
18   Q   Understood. Understood. But after you do
19 your rotation, your 30-minute rotation, you have 30
20 minutes to yourself. Right?
21   A   To make money, you have to make.
22   Q   Let's say you wanted to take a break and
23 go upstairs to the dressing room --
24   A   I can do that.
25   Q   You can do that. Right?

Page 126

1     J U R A T
2     I DO HEREBY CERTIFY that I have read the
3  foregoing transcript of my deposition testimony, and
4  I certify that it is true and correct to the best of
5  my knowledge.
6  _____
7  "JANE DOE"
8  SWORN AND SUBSCRIBED BEFORE ME ON THIS ____ DAY OF
9  _____ 2018
10
11 _____
12 Notary Public of the State of ___
13
14
15
16
17
18
19
20
21
22
23
24
25 Job No. NJ3123210

Page 127

1
2  ATTACH TO THE DEPOSITION OF "JANE DOE"
3  IN THE MATTER OF: JANE DOE 1 V. BANC
4  Job No. NJ3123210
5        E R R A T A   S H E E T
6     INSTRUCTIONS: After reading the
7  transcript of the testimony, please note any change,
8  addition or deletion on this sheet.
9     DO NOT make any marks or notations on the
10 transcript, itself. Please sign and date this
11 errata sheet and return it to the court reporter
12 whose name is shown below.
13 PAGE      LINE         CHANGE
14
15
16
17
18
19
20
21
22
23
24
25

Page 128

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19  DATE AND SIGNATURE:
20  _____
21  RETURN TO: Jane A. Garbus, C.C.R.
22  c/o Veritext Legal Solutions
23  290 West Mount Pleasant Avenue
24  Livingston, New Jersey 07039
25  Job No. NJ3123210

Page 129

1
2          C E R T I F I C A T I O N
3     I, JANE A. GARBUS, a Certified Court
4  Reporter of the State of New Jersey, do hereby
5  certify that prior to the commencement of the
6  examination, "JANE DOE" was duly sworn
7  by me to testify the truth, the whole truth and
8  nothing but the truth.
9     I DO FURTHER CERTIFY that the foregoing is
10 a true and accurate transcript of the testimony as
11 taken stenographically by and before me at the time,
12 place and on the date hereinbefore set forth, to the
13 best of my ability.
14    I DO FURTHER CERTIFY that I am neither a
15 relative nor employee nor attorney nor counsel of
16 any of the parties to this action, and that I am
17 neither a relative nor employee of such attorney or
18 counsel, and that I am not financially interested in
19 the action.
20
       *Jane A. Garbus, CCR*
21 _____
22 Certified Court Reporter of the State of New Jersey
23    Certificate No. XI01648
24    Dated: December 3, 2018
25

Page 130

```
 1            Veritext Legal Solutions
        290 W. Mt. Pleasant Ave. - Suite 3200
 2           Livingston, New Jersey 07039
       Toll Free: 800-227-8440  Fax: 973-629-1287
 3
 4  December 3, 2018
 5  To: Lucas A. Markowitz, Esq.
 6  Case Name: Doe, Jane 1 v. Banc, Jack And Joe
 7  Veritext Reference Number: 3123210
 8  Witness: Jane Doe    Deposition Date: 11/14/2018
 9
    Dear Sir/Madam:
10
    Enclosed please find a deposition transcript. Please have the witness
11  review the transcript and note any changes or corrections on the
    included errata sheet, indicating the page, line number, change, and
12  the reason for the change. Have the witness' signature at the bottom
13  of the sheet notarized except in California where they are signing
14  under penalty of perjury and forward the errata sheet back to us at
15  the address shown above.
16
17  If the jurat is not returned within thirty days of your receipt of
18  this letter, the reading and signing will be deemed waived.
19
20  Sincerely,
21
22  Production Department
23
24  Encl.
25  Cc: Padraig P. Flanagan Esq.
```



290 W. Mt. Pleasant Ave., Suite 3200, Livingston, New Jersey 07039
(800) 567-8658 (office)   (973) 629-1287 (fax)
Email: Litsup-nj@veritext.com

January 15, 2019

To:  Padraig P. Flanagan

In Re:  Doe, Jane 1 v Banc, Jack And Joe

Veritext Reference Number:   3123210

Witness:   "Jane Doe"                                    Deposition Date:  November 14, 2018

**Enclosed is the sealed original transcript.**

_____   I certify that original transcript was requested prior to the statutory time

required for review and signature had elapsed.

  X      I certify that the witness was given the statutory allowable time within which to

read and sign the deposition, and the witness failed to appear for such reading

and signing.

_____   I certify that transcript has been reviewed by the witness and:

\_\_\_\_   No corrections/changes were made

\_\_\_\_   Attached are the corrections/changes

\_\_\_\_   Corrections were previously forwarded to counsel

Sincerely,
Production Department

Encl.
CC:   Lucas A. Markowitz