**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JANE DOE 1,** individually and on behalf of all other persons similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**BANC, JACK & JOE, LLC dba TITILLATIONS[1] GO-GO BAR, BANC PERO, JOSEPH CARERI, JACK PERO, ABC COMPANIES 1-10 AND JOHN DOES 1-10,**<br><br>*Defendants.* | Civil No.: 17-cv-03843 (KSH) (CLW)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

Before the Court is a motion filed on behalf of plaintiff Jane Doe 1 ("Doe") for conditional certification, court authorized notice, production of relevant contact information relative to her lawsuit filed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and class certification pursuant to Federal Rule of Civil Procedure Rule 23. (D.E. 52.) The Court decides this motion without oral argument, and for the following reasons grants Doe's motion for conditional class certification, court-supervised notice, and class certification.

---

[1] In the complaint this establishment is referred to as "Titilations." However, its actual name is "Titillations," and the Court refers to it as such.

## I. Introduction

On May 31, 2017, Doe filed this putative class and collective action (D.E. 1 ("Compl.")) on behalf of herself and others similarly situated against entity defendant Banc, Jack & Joe LLC d/b/a Titillations Go-Go-Bar ("Titillations"), individual defendants Banc Pero ("Pero"), Joseph Careri, Jack Pero, and various fictitious defendants (collectively, "defendants"). Doe alleges that defendants misclassified her and members of the putative class as independent contractors and refused to pay them minimum wage, instead requiring them to pay to work and to share gratuities they received with defendants and defendants' employees, in violation of the FLSA and the New Jersey State Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq.* (Compl. ¶¶ 2, 3.)

In November 2018, Doe first sought conditional certification on behalf of plaintiff "and all other persons who were employed by defendants anywhere in the State of New Jersey as dancers or entertainers, or any other equivalent position, and who were not paid the minimum wage and were misclassified as independent contractors under the FLSA during the three year period preceding [the] Complaint." (*Id.* ¶ 2.) The Court denied Doe's motion without prejudice, finding that she failed to meet the conditional certification standard. (D.E. 14.) The Court also denied her subsequent motion for reconsideration as untimely. (D.E. 52.)

Doe renews her motion for conditional certification pursuant to 29 U.S.C. § 216(b), and for the first time, requests class certification pursuant to Rule 23. She alleges

that the deposition of Banc Pero, an owner and manager of Titillations, corroborates her previous sworn declaration that defendants classified all exotic dancers at Titillations as independent contractors rather than employees, and failed to pay them minimum wage.  (D.E. 52 ("Moving Brief"), at 3-4; *see also* D.E. 52-3 ("Banc Pero Deposition").)  Upon conditional certification and class certification, Doe petitions the Court to: (1) approve her proposed FLSA Notice and Consent to Sue form; (2) mandate that defendants produce contact information for all dancers who worked at Titillations during the relevant period, including their addresses, phone numbers, and email addresses; (3) authorize plaintiff to send two rounds of notice mailings and to contact potential members by phone if mail is returned as undeliverable; and (4) additionally require defendants to post notice in Titillations' back room and dressing rooms and give personal copies of the notice to all current dancers upon arrival for their first shift. In addition, Doe requests that all her state law claims proceed as a class action and that a proposed class action notice be sent to the class members. (D.E. 52-12 ("Proposed Order").)  Doe is the sole plaintiff; no dancers have opted into the suit.

Defendants oppose Doe's motion in its entirety, describing her request for conditional certification as "nothing more than a vindictive act to punish Titillations for terminating [her] engagement because she violated the club's rules."  (D.E. 53 ("Opposition Brief"), at 2.)  Defendants contend that they have employed a business model commonly used by other "gentlemen's clubs" and argue that Doe mischaracterized Pero's deposition as new evidence, when in reality it had already been

considered by the Court on her motion for reconsideration. (*Id.* at 14-15.) In the event that certification is granted, defendants challenge Doe's proposed form of notice as "excessive and unfairly prejudicial." (Opposition Brief, at 18.) They request that the Court limit the means of providing notice to regular mail, the type of contact information to be provided to Doe's counsel to physical mailing addresses, and the potential class definition to those who worked or work at Titillations from May 31, 2017 to the present. (Opposition Brief, at 17-21.) Additionally, defendants argue that the class action should be denied because the class of purported plaintiffs is not ascertainable given the transitory nature of the exotic dancing industry; Doe cannot adequately represent the interests of the purported class because she is vengeful and her interests are therefore antagonistic to the interests of its other members; and that common questions of law do not predominate because the individual question of reliance and damages for dancers working different shifts and collecting varying amounts in tips will overwhelm questions that are common to the class.

## II. Factual Background

As alleged in the complaint and supported by Doe's 2017 declaration (D.E. 14-1 ("2017 Doe Decl.")), she worked from August 2016 until January 2017 as an exotic dancer at Titillations, an adult entertainment nightclub located in Bloomfield, New Jersey. (Compl. ¶ 8; 2017 Doe Decl. ¶¶ 2, 4.) Doe's job duties included "dancing on stage during stage rotation, performing personal dances (also called 'lap dances' or

'private dances') for customers, and spending time with customers in semi-private rooms and areas." (2017 Doe Decl. ¶ 3.)

Doe asserts that she was classified as an "independent contractor" rather than an employee, and that she "understand[s] that all the dancers who worked at Titillations at the same time as [she] did were classified the same way." (2017 Doe Decl. ¶ 5; *see also* Banc Pero Deposition.) She alleges that she was not paid an hourly minimum wage or issued a paycheck, W-2, or 1099, and her sole income was derived from patron tips. (Compl. ¶¶ 28-30.) Upon information and belief Doe alleges that "over 100 different women have worked as dancers at Titillations without being paid any minimum wages[.]" (*Id.* ¶ 31; *see also* Banc Pero Deposition.) Individual defendant Banc Pero, an owner/manager at Titillations, testified that all dancers at Titillations are considered independent contractors rather than employees and therefore do not receive minimum wage. (Banc Pero Deposition, at 75:6-15; 76-9-15; 79:23-80:4.)

Doe was required to pay a $30.00 non-negotiable "house fee" or "tip out" to the manager for each shift she worked, as well as an additional $15.00 to the DJ, regardless of how much money she earned working her shift. (Compl. ¶ 39; 2017 Doe Decl. ¶ 16.) Doe alleges that, during her first shift at Titillations, the manager read aloud and gave to her a written copy of the "rules for the position" and instructed her that these rules and other expectations posted on the club's bulletin board were the "official rules of the club." (2017 Doe Decl. ¶¶ 14-15.) These "Dancer Info and Rules," which have been effective for more than 15 years and apply to all dancers, governed fees,

scheduling, and dancers' appearance and performance and were posted "conspicuously in the back room for all dancers to see," in dressing rooms, and on the Titillations bulletin boards. (2017 Doe Decl. ¶¶ 18, 21-33; D.E. 52-4, Ex. B ("Dancer Info and Rules"); Banc Pero Deposition, 38:2-39-6.)  The rules state the following: "YOU ARE CONSIDERED AN INDEPENDENAT CONTRACTOR. YOU ARE NOT AN EMPLOYEE. YOU WILL NOT GET A PAYCHECK AND YOU ARE NOT ON OUR BOOKS."  (Dancer Info and Rules, at D0000009.)  In addition to this posting, Doe asserted in her 2017 declaration that she "often spoke with other dancers in the dressing room" and "observed [them] during their shifts," and "[b]ased upon these observations and the many rules posted in the back room, it was clear to [her] that each and every dancer was subject to the same rules and performed the same job duties as [she] did."  (2017 Doe Decl. ¶ 20.)

## III. Discussion

### a. Conditional Certification

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  Section 216(b) grants "similarly situated" employees the right to sue in a collective action.  29 U.S.C. § 216(b).  Distinct from class actions brought under Fed. R. Civ. P. 23, the FLSA requires collective action members to affirmatively opt in by filing a written consent with the court.  *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242-43 (3d Circ. 2013).

The Third Circuit follows a two-step process when determining if a suit brought under the FLSA may proceed as a collective action. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds*, *Symczyk*, 569 U.S. 66 (2013). At the first stage, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Id.* If the plaintiff satisfies this burden, the court grants conditional certification "for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi*, 729 F.3d at 243. At the second step, the court, with the benefit of a fuller record, "makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Id.* Plaintiffs must satisfy the preponderance of evidence standard at the final certification stage. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 534 (3d Cir. 2012); *see also Symczck*, 656 F.3d at 193 ("This stage is less lenient, and the plaintiff bears a heavier burden.").

To qualify for the initial certification, a plaintiff must make a "modest factual showing" that the proposed class of employees is "similarly situated." *Id.* Courts apply a "fairly lenient standard," as this stage "occurs early in litigation when the [district] court has minimal evidence." *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 78 (D.N.J. 2014) (Simandle, J.). Still, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged

policy affected her and the manner in which it affected other people." *Symczyk*, 656 F.3d at 193 (citations omitted).

"The [C]ourt does not consider the merits of the dispute at the notice stage, and the plaintiff must only demonstrate that the potential class members' 'positions are similar, not identical,' to [her] own." *Steinberg v. TD Bank, N.A.*, 2012 WL 2500331, at *5 (D.N.J. June 27, 2012) (citations omitted) (Bumb, J.); *Shakib v. Back Bay Rest. Grp. Inc.,* 2011 WL 5082106, at *2 (D.N.J. Oct. 26, 2011) (Cavanaugh, J.) ("The merits of the plaintiff's claim need not be evaluated and discovery need not be completed in order for such notice to be granted and disseminated.")

## 1. Record Evidence

At this stage, the Court is only concerned with whether Doe made the necessary factual showing, albeit modest, that she and the proposed class are similarly situated as victims of a common policy or plan that violated the law.  Doe renews her argument that conditional certification is proper because all exotic dancers working at Titillations were victims of defendants' alleged misclassification of them as independent contractors and the related failure to pay them minimum wage.  In its November 2018 opinion, the Court agreed with the defendants that "Doe has failed to provide any evidence, beyond mere unsubstantiated assertions, that the other employees were treated the same way" as Doe.  (D.E. 14, at pg. 6 (internal quotations omitted)). However, in her present motion, Doe asserts that deposition testimony, which has not been reviewed by the Court until now, "conclusively establishes that all dancers were

subject to a common policy that violates the FLSA." (D.E. 52-1, ("Moving Brief"), at pg. 11.) Doe argues that this new evidence corroborates and substantiates her previous sworn declaration and therefore provides the Court with the modest factual showing required.

Significantly, to satisfy the modest standard required at this stage, Doe need only "produce some evidence, 'beyond mere speculation'" that this practice or policy exists. *Symczyk*, 656 F.3d at 193 (citations omitted). In support of her motion, Doe directs the Court's attention to the source of Titillations' employment policy—Banc Pero, Titillations' owner/manager who controls the terms and conditions of Doe's employment and who made the decision to designate dancers as independent contractors. (Opp. Br., at 5-6.) Pero's testimony clearly establishes that Titillations has a policy of classifying its dancers as independent contractors.

First, Doe cites to Pero's admission that for at least 15 years, defendants have not paid any wages to dancers because they consider them to be independent contractors. (D.E. 52-3 ("Banc Pero Deposition"), at 75:6-15; 76:9-15.) Additionally, he testified that all other Titillations workers including barbacks, bartenders, DJs, managers, and kitchen staff, are considered employees and are all paid above minimum wage. (*Id.* at 72:11-73:1; 73:24-74:12.)

In her previous motion, Doe argued that the "only greater proof missing from the record would be a workplace sign advising that 'all dancers are independent contractors and are not paid minimum wage.'" (D.E. 18 ("Jan. 2018 Reply Brief") at 3.).

She now offers such proof.  Doe attaches to her brief the "Dancer Info and Rules," which state: "YOU ARE CONSIDERED AN INDEPENDENAT CONTRACTOR. YOU ARE NOT AN EMPLOYEE. YOU WILL NOT GET A PAYCHECK AND YOU ARE NOT ON OUR BOOKS."  (Dancer Info and Rules, at D0000009.)  Pero testified that these rules, which has been in effect for a "minimum of 15 years," apply to all dancers and are posted "in the hallway for dancers to see."  (Banc Pero Deposition, 38:2-39:6.)  This posting also demonstrates that Doe and all other exotic dancers were subject to a uniform set of rules regarding what they could wear, in what style and for how long they could dance, how often and in what manner they may request tips from customers, where they may eat, and how to conduct themselves during private dances.  (Dancer Info and Rules, at D0000009.)

### 2. *Sufficiency of Evidence*

The Court is satisfied that, based on the new evidence she has presented to the Court, together with her prior declaration, Doe has made a factual showing that defendants maintain a company-wide policy of treating members of the putative class as independent contractors, and thereby has met her fairly lenient burden.  Dancers at Titillations are similarly situated and subjected to a common policy that, if proven, violates the FLSA.  Pero's deposition testimony, where he concedes that he treats all Titillations the same—as independent contractors—and acknowledges this designation is part of the club's written rules, which are directed at and apply to all dancers, substantiates Doe's prior declaration, resolves the Court's past concerns, and

establishes that defendants have subjected the dancers to a common policy of denying dancers minimum wage.  Indeed, Doe has offered more than a modest factual showing that she and other members of the putative class are similarly situated; in addition to defendants uniform policy of classifying them as independent contractors rather than employees, she has also evidenced that they work or worked at the same location, and shared the same duties and responsibilities as dancers.  *See, e.g., Verma v. 3001 Castor, Inc.,* 2014 WL 2957453, at *12. (E.D. Pa. June 30, 2014) (conditionally certifying class based on defendant's company-wide policy of treating members of the putative class as independent contractors based on modest factual showing that plaintiff and other dancers "work or worked at the same location…share the same 'dancer' job duties and responsibilities…and…have been classified as independent contractors." )

Defendants do not take issue with Pero's characterization of dancers as independent contractors nor do they argue that these women are subject to different rules and policies.  In their opposition brief, they readily acknowledge that classification was a deliberate business decision; Pero consulted with an accountant and performed his own independent research before categorizing dancers as independent contractors. (Opposition Brief, at 5-6.)  Instead, defendants contend that Doe has mischaracterized Pero's deposition as new testimony.  But Pero's deposition was taken on November 20, 2018, the day before the Court filed its first opinion. Although Doe cited to Pero's deposition in her motion for reconsideration, the Court denied that motion on

procedural grounds; it was not considered on the merits.  (D.E. 45.)  Therefore, the Court considers Pero's deposition new and compelling evidence.

Defendants also contend that because Doe and other putative class members earned more money as independent contractors than they would have if they had been classified as employees—an arrangement which the dancers "knowingly accepted"— they cannot claim that they were deprived a living wage in violation of the FLSA. (Opposition Brief, at 11.)  Defendants further aver that their "business model…could never be sustained if its dancers are classified as employees subject to minimum wage." (*Id.*)  This argument, which requires the Court to consider the merits of the FLSA claim, is not properly considered at this stage of the analysis.[2]

Defendants also stress, as they did in in their prior opposition brief, that Doe is the only named plaintiff and no other exotic dancers have opted-in.  (Opposition Brief, at 16.)  They cite to an unpublished case outside this Circuit, *Rodgers v. CVS Pharmacy, Inc.*, to support their point that "[c]ertification of a collective action and notice to a potential class is not appropriate to determine *whether* there are other[s] who desire to

---

[2] Defendants make other attempts to attack the merits of Doe's claim.  For instance, they cite to *Matson v. 7455, Inc.*, an unpublished case from the District of Oregon holding that dancers were not employees for purposes of the FLSA.  2000 WL 1132110 (D. Or. Jan. 14, 2000).  *Matson's* scant legal analysis is unpersuasive. The *Matson* court considered a written agreement between the employer and the dancer stating she was an independent contractor to be the most "telling indicator" of her status.  Self-imposed labels, like the ones applied by defendants in this case, are not controlling.  *See, e.g., Hurst v. Youngelson*, 354 F. Supp 3d 1362, n.4 (N.D. Ga. Jan. 28, 2019); *Safarian v. American DG Energy Inc.*, 622 Fed. Appx. 149, 152 (3d Cir. 2015) (holding that to determine a worker's rights under the FLSA, as employee or independent contractor, the court must look beyond the structure of the parties' relationship to the economic realities).

join the lawsuit.  Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the Court." *Rodgers v. CVS Pharmacy, Inc.*, 2006 WL 752831, at *3 (M.D. Fla Mar. 23, 2006).  Defendants contend that other dancers have not joined because it is not financially savvy to do so, citing to Doe's own testimony in which she states that the dancers "knew [Titillations] as a good place to make money."  (D.E. 53-3, Ex. B ("Doe Deposition"), at 57:17-20, 75:14-76-13.)

The relevant question before the Court is not whether plaintiffs have opted in, but rather, whether the named plaintiff has made the requisite factual showing.[3]  In the Court's previous opinion, it faulted Doe for submitting insufficient evidence to support her claim.  However, at this stage, the court "usually has only minimal evidence before it."  *Zavala v. Wal-Mart Stores, Inc.*, 2010 WL 2652510, at *2 (D.N.J. June 25, 2010) *aff'd sub nom. Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012).  The determination, therefore, "is made using a fairly lenient standard."  *Id.*  And in this renewed motion, Doe no longer relies upon her affidavit alone; she has submitted deposition testimony

---

[3] Courts in other districts have required "a showing not only that similarly situated potential plaintiffs actually exist, but that a substantial number likely have an interest in joining the litigation."  *Pecor v. N. Point EDC Inc.,* 2017 WL 3723600, at *6 (E.D. Wis. June 9, 2017) (collecting cases).  However, this theory is not universally held, and, significantly, is not observed in the Third Circuit.  *See, e.g., Camp v. Bimbo Bakeries USA, Inc.,* 2019 WL 440567, at *3 (D.N.H Feb. 4, 2019) ("On balance, the court agrees that it is premature to require plaintiffs to demonstrate, before notice is given, that there are other potential members of the collective who are interested in participating in this litigation. Defendants have not produced contact information for the potential opt-in plaintiffs.").  Moreover, the Court is persuaded that there may in fact be "good reason" why no other dancers have opted in so far.  (D.E. 52-11 ("2019 Doe Decl.) ¶ 4.) In her declaration, Doe explains that dancers wear wigs and heavy-make up, use stage names, and do not interact outside of work.  (*Id.* ¶¶ 4-5.)  If Doe was unable to identify her fellow dancers, she would not have been able to contact them about this matter. (*Id.* ¶ 4.)

that corroborates and substantiates her previous declaration. Other courts have approved collective action certifications based on less evidence, even where there was only one plaintiff. *See Gonzalez v. Scalinatella, Inc.*, 2013 WL 6171311, at *1 (S.D.N.Y. Nov. 25, 2013) (granting conditional certification motion based on single plaintiff's complaint and declaration); *Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *1 (S.D.N.Y. June 25, 2013) (approving conditional collective action certification based on single plaintiff's declaration confirming that he and other employees were paid less than minimum wage and not paid overtime, among other issues); *Khamsiri v. George & Frank's Japanese Noodle Restaurant Inc.*, 2012 WL 1981507, at *1 (S.D.N.Y June 1, 2012) (approving conditional collective certification based on single plaintiff's affidavit "confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were, *inter alia,* paid less than the statutory minimum wage and not paid overtime pay.") Accordingly, the Court is satisfied that Doe has met the burden required at this stage and will grant conditional certification.

### b. Notice

Upon conditional certification of an FLSA collective action, district courts may provide court-facilitated notice to potentially eligible members. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). This Court therefore has the authority to "supervise the notification process, including how much time plaintiffs are given to notify class members, how class members are notified, and what contact information plaintiffs are

afforded." *Steinberg v. TD Bank, N.A.*, 2012 WL 2500331, at *6 (D.N.J June 27, 2012) (Bumb, J.) (citing *Hoffman-LaRoche*, 493 U.S. at 170-172).  Notice ensures that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.*

Defendants challenge the means by which Doe intends to provide the notice and consent to sue form to potential opt-in plaintiffs.  Doe's proposed order requests that defendants:  (1) produce "a mailing list containing the names, most recent known addresses and phone numbers, and email addresses of all [current and former exotic dancers who worked for defendants at any time between May 31, 2014 to the present]...so that mailing and emailing of the notice may be timely accomplished"; (2) provide "all telephone numbers [d]efendants might have (if any) for any [potential opt-in plaintiffs] whose FLSA Notice is returned by the Post Office as undeliverable or email is rejected"; (3) "post copies of the approved FLSA Notice and Consent to Sue form...in the dressing room/back room of Titillations"; (4) provide the notice and consent to sue form "to all current exotic dancers upon arrival for their first shift which occurs at least thirty days after the date" of the order; (5) mail a copy of the notice and consent to sue form "to all [ ] potential members of the collective"; (6) and mail a second copy of the notice and consent to sue form to "all [ ] potential members of the collective and [ ] attempt to reach the potential members by phone" who have not responded within 60 days of the order."  (Proposed Order ¶¶ 3-7.)

15

Doe argues that her proposal for court-approved notice to potential opt-in plaintiffs meets the timeliness, accuracy, and informational requirements. More precisely, Doe contends that the proposed notice "describes the lawsuit, informs all individuals who have worked as exotic dancers for Defendants of their opportunity to 'opt-in,' instructs them how to opt-in, and notifies them of the effect of their decision to opt in." (Moving Brief, at 15.) Defendants argue that the proposed notice is "excessive and unfairly prejudicial," and to the extent the Court grants conditional certification, they request that it (1) limit the potential class of plaintiffs to only "those who currently dance or danced at Titillations from May 31, 2017 to the present"; (2) restrict the means of providing notice to regular mail; and (3) only require defendants to provide Doe with the mailing addresses of potential plaintiffs. (Opposition Brief, at 17-19).

Generally, sending notices by first class mail and providing the defendants with home addresses is considered sufficient and "additional information and contact methods are typically provided only if necessary." *Steinberg*, 2012 WL 2500331, at *7. However, "[i]n this day of electronic communications, courts in this District have found notice by electronic means in conjunction with first class mail to be an appropriate method of facilitating notice." *See Sanchez v. Santander Bank, N.A.*, 2019 WL 6050738, at *3 (D.N.J. Nov. 15, 2019) (Arpert, J.).

While defendants argue that Doe should be limited to obtaining only mailing addresses and contacting them via regular mail, electronic communication, such as

email, is now commonplace and does not unduly burden defendants. [4]   *See id.*  The Court will therefore grant Doe's request that defendants produce the names, last known addresses, phone numbers, and email addresses of the putative class members.  And with respect to phone numbers, it appears that Doe intends to contact by phone only those whose mail is "returned by the Post Office as undeliverable or email is rejected." (Proposed Order ¶ 3.)  The Court further grants Doe's request for defendants to mail a copy of the notice and consent to sue form to all potential members of the class and to send a reminder notice by mail and email to those potential plaintiffs who have not responded within 60 days.  *Porter v. Merrill Lynch Pierece Fenner & Smith, Inc.*, 2018 WL 5874094 (D.N.J. Nov. 9, 2018) (Wolfson, J.) (permitting reminder notice); *Gervasio v. Wawa, Inc.*, 2018 WL 385189, at *7. (D.N.J. Jan. 11, 2018) (Sheridan, J.) (same). The Court will also grant Doe's request that defendants post the relevant documents.  The Court agrees with Doe's assertion that "dancers may be more transitory than others who worked for Defendant" and therefore some of "the additional forms of notice are necessary in this case." (Reply Brief, at 11.)  The Court does not see how requiring defendant to hang a piece of paper is unduly burdensome or unfairly prejudicial to defendants.  However, the Court understands defendants' concern about a notice provision that requires them to directly hand the forms to each dancer when she arrives

---

[4] Although defendants objected to the production of certain materials, much of the requested information, such as the email addresses of the putative class members, "may be properly discovered to facilitate notice of a FLSA collective action."  *Pearsall-Dineed v. Freedom Mortg. Corp.*, 27 F.Supp.3d 567, 575-75 (quoting *Hoffman-LaRoche*, 493 U.S. at 170) (Irenas, J.)

for her first shift.  Given the other forms of notice that have been granted, this method is unnecessarily duplicative.  The Court therefore denies Doe's request that defendants hand out the notice forms, but otherwise grants all requested forms of notice as they are necessary to further the broad remedial purposes of the FLSA and ensure that potential collective action members receive accurate and timely notice of the action.  *See Verma*, 2014 WL 2957453, at *13 (granting plaintiffs request that defendant post the notice of suit in a conspicuous place in its nightclub); *Garcia v. Pancho Villa's of Huntington Village*, Inc., 678 F.Supp.2d 89, 96 (E.D.N.Y. Jan. 15, 2010) (allowing notice of FLSA action to be posted at all of defendant's business locations).

Defendants also challenge the makeup of the potential class of defendants.  The statute of limitations for FLSA claims is two years, or three years in the case of willful violations.  29 U.S.C. § 255(b).  And plaintiffs have six years from the date a complaint is filed to bring a claim under the NJWHL.  N.J.S.A. § 34:11-56a25.1. Doe filed her complaint on May 31, 2017 and proposes that notice be sent to all dancers who worked at Titillations from May 31, 2014 through the present.

 Defendants ask that the Court limit the potential class of plaintiffs to those who currently dance or danced at Titillations from May 31, 2017 to the present.  (Opposition Brief, at 18.)  They argue that the two-year statute of limitations should apply, rather than the three-year period, because Doe cannot demonstrate that defendants' classification of dancers as independent contractors was willful.  The Court will not limit the time this of this notice period.  A violation is willful where "at a minimum, the

employer 'showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Stone v. Troy Constr., LLC.*, 935 F.3d 141, 148 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33) (1988)). It is premature for the Court to decide whether defendants acted willfully before the parties have engaged in full discovery. Whether defendants acted willfully is "an issue of fact that should be decided by a factfinder at trial and we decline to limit the potential size of the collective based on the limited record now before us." *Rocha v. Gateavy Funding Diversified Mortgage Services, L.P.*, 2016 WL 3077936, at *8 n.6 (E.D. Pa June 1, 2016) (citing *Chung v. Wyndham Vacation Resorts, Inc.*, 2014 WL 4437638, at *4 (M.D. Pa. Sept. 9, 2014).

### c. Class Action

In addition to conditional certification of her FLSA claims, Doe also seeks Rule 23 class certification of her state law claims. Doe alleges that defendants violated the NJWHL by improperly classifying her and similarly situated dancers as independent contractors, failing to pay them minimum wage, and forcing them to share portions of their tips with the club and other employees. She also alleges that defendants were unjustly enriched because class members conferred a substantial benefit upon defendants by working without pay and being required to share tips with defendants and their nontipped employees. Additionally, Doe alleges that the misclassification and

the related requirement to share gratuities was a misrepresentation by defendants that constitutes common law fraud.[5]

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations omitted). Thus, to justify a departure from the general rule that each litigant proceeds with her own action, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 348-48 (internal quotations omitted). "Rule 23 does not set forth a mere pleading standard." *Id.* at 350. Therefore, a plaintiff who attempts to certify a Rule 23 class must produce evidence sufficient to demonstrate her compliance with the rule. *See id.* at 350-51. And the Court must undertake a "rigorous analysis" of the Rule 23 requirements, which often involves "some overlap with the merits of the plaintiff's underlying claim." *Id.* (citations omitted).

To be certified, a class must satisfy the four threshold requirements of Rule 23(a): "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *In*

---

[5] Defendants argue that the unjust enrichment claim should be dismissed because dancers were "not denied a benefit for dancing at Titillations" because they "were more than adequately compensated." (Opposition Brief, at 24-25.) Defendants therefore maintain that it "can be reasonably be presumed that dancers were earning well in excess of the minimum wage." (*Id.* at 25.) Defendants have not presented the Court with sufficient evidence to make this inference. With respect to the claim for common law fraud, defendants argue that Pero simply expressed an "opinion that dancers are independent contractors," and because it is "not a statement of fact, it is his opinion," no misrepresentation of fact could have been made. (*Id.* 25-26.) The Court disagrees with this assessment. Based on the record, it was Titillations' policy to classify dancers as independent contractors. (*See* Dancer Info and Rules, at D0000009.) Neither of these claims will be dismissed.

*re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308–09 (3d Cir. 1998). Those seeking class certification "bear the burden of establishing by a preponderance of the evidence that the requirements of Rule 23(a) have been met." *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 391 (3d Cir. 2015). If the Rule 23(a) criteria are satisfied, the court considers "whether the class meets the requirements of one of the three categories of class actions under Rule 23(b)." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016), *as amended* (May 2, 2016).

Doe seeks class certification under 23(b)(3) and 23(b)(2).[6] To seek certification under 23(b)(3), she must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013). Accordingly, these requirements of Rule 23(b)(3) are known as predominance and superiority.

---

[6] Alternatively, Doe seeks certification under 23(b)(2), which requires that she establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). With respect to this certification pathway, Doe seeks only to certify a class of "current" Titillations employees. Implicit in Rule 23 is the requirement that the class representative must be a member of the proposed class. Because Doe left her position at Titillations in early 2017, she was not a member of proposed class of all "current" dancers at the time she filed this motion. As such, the Court need not reach a 23(b)(2) analysis.

### 1. 23(a)

The Court will first examine the four threshold requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

### i. Numerosity

The Court must find that the putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 183 (3d Cir. 2001). There is "no minimum number of plaintiffs required to maintain a suit in a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

To support her claim that the class is sufficiently numerous, Doe directs the Court's attention to Pero's estimation that there are more than 90 dancers working at Titillations. (Pero Deposition, at 22:13-18.) Additionally, Doe notes that "just looking at a sampling of two two-week spans in 2017 and 2019, there are over 120 different dancers listed on Titillations' schedule." (Moving Brief, at 9.) Although no other plaintiffs have opted in yet, Doe has provided adequate evidence that the potential class, consisting of exotic dancers who worked at Titillations from May 31, 2014 until the present, is sufficiently numerous to satisfy this first requirement by a preponderance of the evidence.

## ii. Commonality

Commonality "does not require identical claims or facts among class member[s]." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2014), *abrog. on other grounds by Hydrogen Peroxide*, 552 F.3d at 318 n.18.  However, the named plaintiffs must share at least "one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotations omitted)). "Their claims must depend upon a common contention. . . that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2545, 180 L.Ed.2d 374 (2011).  It is not particularly difficult to meet this requirement: "[W]e have acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable."  *In re Cmty. Bank,* 795 F.3d at 397 (internal citations omitted).

One legal issue is common to all members of this putative class and constitutes a unifying thread: the propriety of defendants' policy of misclassifying exotic dancers as independent contractors, rather than employees.  The Court agrees with Doe that this "classification will not vary from dancer to dancer."  (Moving Brief, at 20.)  Defendants classify all Titillations dancers as independent contractors, and as such, subject them all to the same rules, fee structure, policies, and tip-out protocol.  (Banc Pero Deposition,

at 38:2-10.)  Because the question of whether defendants are misclassifying the dancers is central to determining liability for each state law claim, it makes sense to allow Doe and other putative class members to proceed as a class. The commonality requirement is satisfied here.

### iii. Typicality

Rule 23(a)(3) also requires that a class representative's claim be "typical of the claims…of the class."  Fed. R. Civ. P. 23(a)(3).  This "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182–83 (3d Cir. 2001) (quoting *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 141 (3d Cir.1998)).  There is "low threshold" for typicality."  *Id.* at 183.  "'Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir.1998) (quoting *Baby Neal v. Casey,* 43 F.3d 48, 58 (3d Cir.1994)) (alteration omitted).  "This investigation properly focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to her claims."  *In re Schering Plough Corp ERISA Litigation,* 589 F.3d 585, 597-98 (3d Cir. 2009).

Doe has alleged that defendants misclassified dancers as independent contractors pursuant to a blanket policy that applies to every single exotic dancer at Titillations. Whether the dancers are properly designated as independent contractors is the key issue of liability in this matter and therefore all class members will assert the same legal claim, a denial of minimum wage. Defendants have admitted that the same policies and rules apply to all dancers and thus, all class members will assert this claim based on the same set of factual circumstances. No unique or atypical defenses are evident based on the record. As such, the Court finds that typicality is satisfied.

### iv. Adequacy of representation

Rule 23(a)(4) requires a class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Third Circuit employs a two prong-inquiry to assess whether this obligation can be fulfilled, which asks: (1) whether the proposed class counsel is sufficiently qualified to represent the class; and (2) whether there are "conflicts of interest between named parties and the class they seek to represent." *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016), *as amended* (May 2, 2016) ("It tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations.")

Defendants do not take issue with Doe's counsel but instead argue that Doe cannot adequately represent the purported class of plaintiffs because her interests are

"antagonistic" to the class. Plaintiff's interest is revenge." (Opposition Brief, at 22.)
She "does not seek to vindicate the right of other dancers to earn a reasonable wage—
[p]laintiff's suit is nothing more than a vindictive act to punish Titillations for
terminating [her] employment engagement because she violated the club's rules."
(Opposition Brief, at 2.) Defendants further allege that Doe only worked two shifts at
Titillations and "has not pursued similar claims against two different Florida clubs
where she danced that employed the exact business model as Titillations." (*Id.* at 1.)
They claim that Doe "filed suit against Titillations for several reasons, none of which
has anything to do with Titillations classification of [her] as an independent contractor."
(*Id.* at 7.) Defendants therefore contend that a conflict of interest exists between Doe
and the purported class, whose "interest is undoubtedly to maintain the status quo so
that they can continue to maintain a financially lucrative lifestyle by making 'good
money.'" (*Id.* at 2.) In response, Doe argues that defendants "offer no evidence that
[Doe's] interests are antagonistic to the class" or that the class' true interest is to
"maintain the status quo." (Reply Brief, at 11.) She further asserts that the record
evidence demonstrates that she worked for a longer period of time than defendants
claim.[7]

---

[7] As evidence that she worked at the club during the period she alleges, Doe cites to: (1) phone records detailing her 54 calls with Titillations between August 2016 and January 2017 (D.E. 57-1, Ex. B ("Doe Phone Records")); and (2) her description of photos taken inside the club with time/date stamps from late 2016 and early 2017. (D.E. 57-2, Ex. C ("Doe Deposition – 2").)

The record indicates that Doe was fired from Titillations after she did not pay the house fee, which she stated she could not afford.  (Doe Deposition, at 44:7-45:11.). Aside from her complaints about pay, Doe also testified about other issues she encountered at Titillations, including workplace rules and safety concerns:

> "[I]t's a whole different ballgame because in the other club that I worked at, they never had any of these postings, bulletins, rules, regulations like this; just take care of your house and go home, make your money and go home. . . .and there is no such thing as security to walk you to your car at Titillations. (*Id.* at 44:7-45:11; 71:9-15; 73:5-22; 74:25-75:6.)

While the Court lacks some clarity about the specific tenure of Doe's employment and takes note of these other reasons why Doe pursued litigation, her issues with defendants, including their uniform rule requiring house and DJ payouts, are relevant to issues facing the entire class.  Moreover, the Court is not aware of any evidence in the record that suggests Doe has acted with malice in pursing this claim. The Court therefore finds that Doe can adequately represent the interests of the class members—all of whom are dancers facing identical legal issues.

### 2. Ascertainability

Satisfied that Doe's class meets the Rule 23(a) threshold requirements, the Court will next turn to the question of whether the class is ascertainable.  An "essential prerequisite" of a class action under Rule 23(b)(3) is that the class is "currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592 (3d Cir. 2012).  "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is

inappropriate." *Id.* at 593. The "ascertainability requirement…is consistent with the general understanding that the class-action device deviates from the normal course of litigation in large part to achieve judicial economy." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015), *as amended* (Apr. 28, 2015). The inquiry is two-fold; it requires that plaintiff show that: "(1) the class is 'defined with reference to objective criteria;' and (2) there is a 'reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 163 (quoting *Carrera v. Bayer Corp.*, 727 F.3d. 300, 306 (3d Cir. 2013)). The plaintiff only needs to show "these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members *can* be identified." *Id.* (emphasis in original) (quoting *Carrera*, 727 F.3d at 308 n.2)

Defendants argue that it is "virtually impossible to ascertain the identities" of former dancers given the nature of the exotic dancing industry—turnover is constant, and dancers use stage names and maintain anonymity for protection. (Opposition Brief, at 2.) They contend that they will only be able to identify those dancers that currently work at the club and those that have been terminated. (*Id.*)

With respect to the first inquiry, Doe contends that the class is in fact defined by objective criteria "because if an individual danced at Titillations during the limitations period then she was classified as an [independent contractor] and not paid the minimum wage." (Reply Brief, at 7.) The Court agrees with Doe and is satisfied that the first prong here is met. Doe seeks to certify a class of "all persons who worked at Titillations

as exotic dancers at any time three years prior to the filing of the Complaint until entry of judgment in this case." (Moving Brief, at 26.) This class has clear, objective criteria. Class members must have (1) worked at Titillations (2) as exotic dancers (3) during the relevant time period.

The Court is also satisfied that Doe meets the second requirement, that a reliable and administratively feasible mechanism exists to determine whether an individual fits within the class definition. Doe has provided the Court with a sampling of the defendants' online schedules from 2017 and 2019, which indicate which dancer worked on a given date and shift. (D.E. 52-7, Ex. D ("Dancer Schedules, 2017"); DE 52-8, Ex. E ("Dancer Schedules, 2019")). These schedules contain only the dancers' stage names, but as Doe argued in her brief, Titillations also maintains records for each dancer that, in addition to her stage name, also contain the following relevant identifying information: (1) the dancer's real name; (2) the dancer's street address; (3) the dancer's cell phone number; (4) the dancer's date of birth; (5) the dancer's date of hire; (6) the dancer's social security number. (D.E. 57-1, Ex. A ("Sample Dancer Applications").) Defendants' records therefore contain the information necessary to determine whether a dancer fits within the putative class. Accordingly, Doe has satisfied this necessary prerequisite to certifying a class.

### 3.  23(b)(3)

When seeking certification pursuant to Rule 23(b)(3), a plaintiff must prove that (i) common questions of law or fact predominate (predominance), and (ii) the class action is superior method for adjudication (superiority)." *Cmty Bank*, 622 F.3d at 291.[8]

## ii. Predominance

The predominance requirements "begins, of course, with the elements of the underlying cause of action." *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370 (3d Cir. 2015) (internal citations omitted).  Doe's underlying cause of action is that defendants (1) violated the NJWHL by misclassifying class members as independent contractors, failing to pay them minimum wage, and forcing them to share tips; (2) were unjustly enriched by requiring putative class members to share their tips; and (3) committed fraud by misrepresenting that the potential class members were independent contractors, rather than employees. (Compl. ¶¶ 80-96.)

Whereas Rule 23(a)(2)'s commonality element requires that the proposed class members share at least "one question of fact or law with the grievances of the prospective class," *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotations omitted), Rule 23(b)(3)'s predominance element requires that common

---

[8] Where an action is to proceed as under Rule 23(b)(3), "[i]t is often appropriate to discuss commonality and predominance together because the commonality inquiry is subsumed into the predominance inquiry." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (citing *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008)).  However, "in the interest of clarity, we will address each requirement separately." *Id.*

issues "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3); *Marcus*, 687 F.3d at 604.  This predominance requirement therefore "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.

To determine whether predominance has been met at the class certification stage, the Court must assess whether the "essential elements of the claims brought by the putative class are 'capable of proof at trial through evidence that is common to the class rather than individual members.'"  *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (quoting *In re Hydrogen Peroxide*, 552 F.3d at 311–12)).  Class certification is "unsuitable" where "proof of the essential elements of the cause of action requires individual treatment."  *Gonzalez v. Corning*, 885 F.3d 186, 196 (3d Cir. 2018) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).  However, "the presence of individual questions does not *per se* rule out a finding of predominance."  *In Re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998).  This analysis requires a "rigorous assessment of the available evidence and the method or methods by which plaintiffs proposed to use the evidence to prove" these elements.  *In re Hydrogen Peroxide*, 552 F.3d at 312.)

Doe's briefing and the record she has presented to the Court focus on the issue of liability.  (Moving Brief, at 25) ("Here, one common question predominates over all others: Are the hundreds of dancers who Titillations classified as ICs really employees?")  The question of defendants' liability hinges on whether their policy of

classifying dancers as independent contractors, and those rules related to this practice, violates the NJWHL. The record clearly demonstrates that defendants applied these policies and practices to Doe and all potential class members. The Court will not need to assess this on an individual level; it is undisputed that defendants uniformly classified dancers as independent contractors and subjected them to the same fee policies and tip out requirements. The Court is therefore satisfied that the key issue here—whether Titillations dancers were properly designated as independent contractors rather than employees—predominates over questions affecting individual members of the class and can be proven on a class-wide basis. *See also Verma v. 3001 Castor, Inc.*, 2016 WL 6962522, at *8-10 (granting plaintiffs' second motion for Rule 23(b)(3) class certification as to minimum wage, overtime, and tip-out claims).

The parties disagree, however, about the effect of individual damage calculations, and whether they will overwhelm questions common to the class. Defendants argue that they will, because Doe's "claim for compensatory damages will require the determination of the number of hours worked multiplied by the minimum wage, less the amount of money she received from customers by way of tips, private dancers, and champagne dances." (Opposition Brief, at 22-23.) Because "damages will need to be individually proven because the dancers worked varying hours and for different wages inasmuch as dancers received varying tips from customers. In addition, the number of private dances and champagne dances performed by each dancer will have to be determined." (*Id.* at 23-24.) Defendants further contend that this class action cannot

proceed because "the length of each dancer's engagement cannot be proven," "the number of shifts each dancer danced cannot be established," "the amount of tips each dancer earned cannot be determine," and "the amount of fees each dancer earned for private dances cannot be determined." (*Id.* at 2-3.)

Doe rejects defendants' damages analysis. First, she notes that they failed to notify the dancers that gratuities were factored into their wages. In fact, this would have been impossible because the only money dancers received came from tips; they did not earn any sort of fixed regular payment. Second, because they never considered dancers to be employees—and have never paid them as such—defendants are not now entitled to this tip credit. (Reply Brief, at 8-9.) Removing the tip credit from the equation, plaintiffs argue, simplifies the damages calculation—all that will be required is to multiply the number of hours worked by minimum wage. (*Id.*)

To be eligible for the "tip credit" under the FLSA and corresponding New Jersey state law, defendants are required to notify their employees of the "tip credit" provision and pay them the corresponding minimum wage that is set for those receiving tip income. 29 U.S.C. 203(m); N.J.S.A. § 34:11-56a4. Defendants paid their dancers no compensation of any kind—the only money they made came from customers' tips. And since defendants did not consider dancers employees and therefore did not pay them minimum wage, defendants had no reason to notify them that they were subject to a "tip credit." Instead, defendants very clearly informed the dancers that they were independent contractors who were "not on [their] books" and who had to pay a portion

of their tips to the club and DJs.  (*See* Dancer Info and Rules, at D0000009.)  As a result of defendants' position that dancers are not employees, the Court finds that defendants are not permitted to now take advantage of a provision that requires an employer-employee relationship and credit the dancers' tips into the damages calculation.  *See, e.g., McFeeley v. Jackson St. Entm't*, 825 F.3d 235, 245–46 (4th Cir. 2016); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 934 (S.D.N.Y 2013) (finding that because defendants failed to notify plaintiffs that "performance fees" (i.e., dancing tips) would not be used as tip credits and because the defendants "always expressly classified plaintiffs as independent contractors [ ], and as such did not pay them a regular wage or salary" they did "not qualify as a 'tip credit,' and do not mitigate the Club's duty to pay dancers a minimum wage.")  Removing the tip credit from the damages calculation leaves a fairly simple analysis: hours worked, which can be gathered from defendants' records, multiplied by the applicable minimum wage.

### iii. Superiority

The final requirement for 23(b)(3) class certification is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule lists four factors to aid the Court in this determination: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) the

desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) the likely difficulties in managing a class action." *Id.*

The Court finds that a class action is the superior means for litigating this lawsuit for several reasons. First, because class members' damages are relatively small (Doe estimates that her damages, exclusive of any liquidated damages would likely range between $3,754.24 to $6,150.02), their ability and incentive to individually litigate their claims may be limited. Second, the consolidation of multiple, nearly identical claims into one action in opposition of defendants' uniform policies and practices promotes the economies of time, effort, and expense. Moreover, as Doe argues, "individual litigation of the claims here could lead to inconsistent results," which is particularly undesirable here, where defendants have applied a uniform policy to all putative class members. (Moving Brief, at 28.) Thus, Doe has shown by a preponderance of the evidence that a class action is the superior method of resolving the state law claims in this matter.

For the preceding reasons, Doe has satisfied the requirements of Rule 23 and the Court grants her motion for a Rule 23 class certification of her state law claims. This decision is in line with courts throughout the country, including in this district, which have certified similar classes involving wage claims against gentlemen's clubs. *See, e.g., DeGidio v. Crazy Horse Saloon & Rest., Inc.*, 2017 WL 5624310, at *15 (D.S.C. Jan. 26, 2017), *aff'd and remanded sub nom. Degidio v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135 (4th Cir. 2018) *Bonton v. Centerfold Entertainment Club, Inc.*, 2015 WL 2380300, *4 (W.D.

Ark. May 19, 2015) (certifying class of exotic dancers alleging violations of Arkansas Minimum Wage Act); *Ruffin v. Entm't of the E. Panhandle*, No. 11-19, 2012 WL 5472165 (N.D. W. Va. Nov. 9, 2012) ; *Flynn v. N.Y. Dolls Gentlemen's Club*, 2015 WL 3916161, *1 (S.D.N.Y. Apr. 28, 2015)); *Verma v. 3001Castor, Inc.*, 2016 WL 6962522, at *8-10 (granting plaintiffs' second motion for Rule 23(b)(3) class certification as to minimum wage, overtime, and tip-out claims).

**IV. Conclusion**

For the forgoing reasons, the Court will certify the collective action under the FLSA and a class under Rule 23(b)(3) against defendants, and grant Doe's notice requests.  An appropriate order will follow.

/s/ Katharine S. Hayden

Date: June 1, 2020                    Katharine S. Hayden, U.S.D.J.

36